453 So.2d 99 (1984)
YOUNG, STERN & TANNENBAUM, P.A., Appellant,
v.
Charles ERNST, Appellee.
YOUNG, STERN & TANNENBAUM, P.A., and Joyce Ernst, Petitioners,
v.
Honorable Richard Yale FEDER, Judge of the Circuit Court of the 11TH Judicial Circuit in and for Dade County, Florida, Respondent.
Nos. 83-659, 83-1753 and 83-2052.
District Court of Appeal of Florida, Third District.
June 26, 1984.
Young, Stern & Tannenbaum and Glen Rafkin, North Miami Beach, for Young, Stern & Tannenbaum, P.A. and Joyce Ernst.
Andrews, Voorheis, Lehrer & Baggett and Glenn R. Mee, Fort Lauderdale, for Charles Ernst.
Robert A. Ginsburg, County Atty. and Roy Wood, Asst. County Atty., for Honorable Richard Yale Feder.
Before SCHWARTZ, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
BARKDULL, Judge.
Following a many faceted dissolution of marriage proceeding, the trial judge rendered a final judgment dissolving the bonds of matrimony and awarding the wife $500,000 as lump sum alimony payable in part in 118 monthly installments and reserved jurisdiction to fix attorney's fees and costs. This final judgment of dissolution was not appealed. The final judgment reads in part as follows:
"A sketchy history of the parties and their marriage seemed appropriate as a prelude to the Court's findings.
Charles Ernst started as the proverbial grease monkey in his father's auto junk yard and by age 16 or 17, without benefit, (or detriment) of college or other graduate education beyond New Utrecht High School in Brooklyn, New York, began to build an empire in auto parts and *100 franchising known as Great Bear Auto Centers throughout the New York-New Jersey-Long Island region. The businesses alone, without considering the real property or other business concerns of Mr. Ernst, was sold in 1977 for over 4 million dollars. Unfortunately most of the selling price was in notes.
There is heated dispute between the parties as to Mr. Ernst's actual worth prior to this marriage to Joyce Ernst in January of 1971. The figures vary from the Wife's view of under 750,000 dollars to the Husband's view of 10,000,000 dollars. Whichever view is accurate, the fact remains that when Joyce started dating Charles, she was a secretary earning under 150.00 dollars a week and began to be wined and dined in every one of New York's famous restaurants, arriving and departing in Chuck's luxurious Rolls Royce, and, within a few short months of the marriage, began to have her Husband build a palatial home in an expensive section of New York. Whether or not Mr. Ernst's net worth was actually 10,000,000 dollars prior to his marriage, he lived like it was.
* * * * * *
After moving from New York to Florida in about 1972, the parties enjoyed an affluent life, complete with first a Del Prado apartment, then a magnificent Eastern Shores home replete with a second lot and tennis court, gradually rising (both literally and figuratively) to a Jockey Club apartment and all the accoutrements of the so called jet-set.
In 1978, the financial empire of Mr. Ernst either collapsed or, at the least, began to crumple at the edges when the purchaser of his Great Bear franchises began to retreat into what may be permanent financial hibernation. As a result, estimates of the Husband's net worth at the present time have plummetted to either 3.6 million or 2.0 million, depending upon whether one looks through the rose colored glasses of the Wife's witnesses or the somber shades of the Husband's. Also whether Mr. Ernst's present financial position is in the trough of a rollercoaster ride, about to climb again to the heights, or is on the edge of the abyss, only time and not this Court can tell. However, a decision of which figure is accurate or which view of his finances is correct is unnecessary since the claim for special equity has been withdrawn and the Court finds equitable distribution inappropriate except insofar as it is ordered by way of lump sum alimony hereinafter, and since either figure is a reasonable basis for support of the Wife to keep her in the style to which she had become accustomed without making either party pass from misfortune to prosperity or from prosperity to misfortune.
Although the Husband has given the Wife a Taste of Honey, the law does not require him to maintain the exact same hive, nor remain the eternal financial drone bringing sustenance to the unemployed Queen.
* * * * * *
VI. Alimony  The facts, as determined by the Court and as believed by the Court, would make an award to the Wife of lump sum alimony appropriate.
* * * * * *
The Court therefore Orders that the Wife shall be paid a lump sum alimony of the sum of 500,000 dollars payable in the following manner: a) title to the three bedroom Jockey Club apartment now held in the name of the Husband shall be conveyed to the Wife along with a bill of sale for all furniture and furnishings therein contained. Based upon the different estimates of the value of this apartment and the furniture and furnishings, the Court finds that the net market value of said apartment and contents as of this date after deducting the remaining outstanding mortgage is 214,750 dollars; b) the sum of 280,250 dollars cash payable in 118 equal monthly installments of 2,375 dollars beginning on the 1st day of May 1982 and continuing on the first day of each month thereafter up to and including the last month which *101 would be March 1, 1992; c) the sum of 5,000 dollars cash which shall be paid forthwith in order to provide the Wife with an opening balance and checking account pending the receipt of various checks for child support and alimony.
To transfer more of the Husband's assets than shown above would, in the Court's judgment based upon the believable and credible evidence, substantially endanger the Husband's economic status, if not utterly destroy it.
* * * * * *
VII. The Court reserves jurisdiction over the parties and the subject matter for the limited purposes as follows:
* * * * * *
2) Determination of the award of attorney's fees and costs."
* * * * * *
Thereafter the matter came on for hearing and the taking of testimony as to the amount of attorney's fees and costs. Following the hearing the Court entered on September 15, 1982 an order awarding the attorneys an additional fee of $83,835.00 plus $21,675.20 as costs without any enforcement provisions. The attorneys then filed a motion to enforce the order and the trial court entered a final judgment for fees and costs and permitted limited execution.[1] The attorneys appeal this order under clerk's file number 83-659.
*102 An execution was issued and the former husband sought relief from the execution which resulted in an order granting the relief requested and also requiring the immediate payment of $25,000 in partial satisfaction of the final judgment for attorney's fees.[2] The attorneys appeal this order under clerk's file number 83-1753.
The appellee then sought to have the trial court approve a sale of the property the subject matter of the order referred to in footnote number 2. The attorneys then filed a petition for writ of prohibition in this court to prevent the trial court from considering this motion.[3] This original proceeding is pending under clerk's file number 83-2052 in this court. Subsequent to review of the petition, a rule to show cause was issued which had the effect of a rule nisi, staying further proceedings of the pending motion in the trial court. See Florida Rules of Appellate Procedure, Rule 9.100(f).
All the proceedings under the three file numbers above referred to were consolidated.
As the trial court had the power to permit lump sum alimony to be paid in installments, Thompson v. Thompson, 402 So.2d 1220 (Fla. 5th DCA 1981); Stith v. Stith, 384 So.2d 317 (Fla. 2d DCA 1980); West v. West, 260 So.2d 541 (Fla. 1st DCA 1972); Chester v. Chester, 241 So.2d 190 (Fla. 3d DCA 1970); Section 61.08 Fla. Stat. (1981), it also had the power to determine that the award of attorney's fees would be structured so as not to deplete or jeopardize the assets remaining with the husband in order that he might have the ability to earn the sums necessary to pay the deferred portion of lump sum alimony and *103 the attorney's fees and costs. House v. House, 399 So.2d 1025 (Fla. 3d DCA 1981); Harder v. Harder, 331 So.2d 341 (Fla. 2d DCA 1976); Flipse v. Flipse, 305 So.2d 16 (Fla. 3d DCA 1975).
We find no abuse of discretion in the exercise of this power under the circumstances as found in the final judgment of dissolution which permeates all the subsequent orders. The trial court was attempting to preserve those assets which were income producing and remained with the husband. No abuse of discretion has been shown in his limiting collections by the attorneys.
The appellant contends that the September order fixing the amount of the attorney's fees and costs was final and could only be modified by motion filed pursuant to Rule 1.540 Florida Rules of Civil Procedure. This overlooks several things, first, the order was not self-executing,[4] second, the order fixing the amount of attorney's fees was merely interlocutory, even though post final judgment, because it did not complete all judicial labor on this issue. Liability for the fee was implicitly fixed in the final judgment of dissolution. The amount of the additional fees and costs were fixed after an evidentiary hearing by the September order and enforcement of the fees and costs were fixed in the order under review. This procedure is similar to a trial court directing a verdict in a jury case which fixed liability, the jury by its verdict, fixing the amount to be assessed because of the liability and the court, by its final judgment providing the enforcement thereof by execution. Certainly it would not be contended that the one prevailing on the directed verdict in this hypothetical could have it enforced against another party without further proceedings. Therefore we find the appellant's contentions to be without merit. The orders under review in appeal number 83-659 and 83-1753 be and they are hereby affirmed. The relief sought in the prohibition proceeding under clerk's file number 83-2052 be and the same is hereby denied and the stay heretofore issued is hereby vacated.
NOTES
[1] This order reads as follows:

"THIS CAUSE came on for hearing upon Respondent's Motion to Reduce Order on Attorney's Fees and Costs to Judgment and Respondent's ore tenus Application for Preliminary Injunction, and the Court having received testimony, having heard argument of counsel, and being otherwise fully advised in the premises, it is
ADJUDGED:
1. That the Respondent's Motion to Reduce Order on Attorney's Fees and Costs to Judgment be and the same is hereby granted with the following terms and conditions as outlined hereinbelow.
Respondent's attorneys, YOUNG, STERN & TANNENBAUM, P.A., shall recover from the Petitioner, CHARLES ERNST, the sum of Eighty-Three Thousand Eight Hundred Thirty-Five and 00/100 ($83,835.00) Dollars as and for the previous award of reasonable attorney's fees, plus interest on said attorney fee award in the amount of Eighty-Eight Thousand Eight Hundred Fifty-One and 31/100 ($88,851.31) Dollars and costs in the sum of Twenty-One Thousand Six Hundred Seventy-Five and 20/100 ($21,675.20) Dollars, making a total of One Hundred Ten Thousand Five Hundred Twenty-Six and 51/100 ($110,526.51) for which let execution issue forthwith on the Petitioner's non-income-producing assets under the following terms and conditions as specifically ordered hereinbelow: This Judgment is not to be recorded against any piece of property of Petitioner, whether income-producing or non-income-producing, other than that particular piece of property that is being executed and levied upon by YOUNG, STERN & TANNENBAUM, P.A. Further, execution shall issue forthwith only upon the following property of which YOUNG, STERN & TANNENBAUM, P.A. may only proceed against one at a time until this judgment is satisfied: Petitioner's stock in Jonathan Cole Management Co., Inc.; Petitioner's stock in Bradford Motorcars, Inc.; Petitioner's interest in the 1960 Rolls Royce automobile; Petitioner's interest in the 1977 Rolls Royce automobile; and Petitioner's interest in the Fort Lauderdale property.
Execution shall be stayed until further order of this Court on the Petitioner's income-producing assets. The Petitioner shall forthwith furnish evidence to YOUNG, STERN & TANNENBAUM, P.A. that the properties located at 65th Street, 817 Remsen and Atlantic Avenue, are income producing with the presentation of evidence as to any monies received from said properties during any period of time during the last three months.
2. That the Respondent's Application for Preliminary Injunction be and the same is hereby granted. The Court notes that Petitioner objected to the granting of the judgment awarded above and in the alternative sought to stay execution of any judgment so awarded. The Court has granted in part the Petitioner's request and has restricted execution as hereinabove set forth. But it would be inequitable to allow the Respondent to transfer or impair the equity in any of his assets until further order of this Court. Accordingly, the Petitioner, CHARLES ERNST, is enjoined and restrained from selling, pledging, or encumbering any item of real or personal property as listed on the Husband's Second Amended Financial Affidavit under caption Asset or Non Income-Producing Property in which YOUNG, STERN & TANNENBAUM, P.A. is herein granted a judgment against.
This Preliminary Injunction is not intended to enjoin or restrain the Petitioner's use of cash funds.
This Preliminary Injunction shall remain in full force and effect until further order of this Court.
3. The Court finds as a matter of law and as a matter of fact that no bond is required and that the Preliminary Injunction is being issued solely to insure that the Petitioner's assets will be available for execution and levy under this judgment."
[2] This order reads as follows:

"UPON CONSIDERATION of the Husband's motion to stay sheriff's sale and grant supplemental relief and the Court hearing testimony and argument of counsel and being otherwise fully advised in the premises, it is
ADJUDGED:
1. That the motion to stay the sheriff's sale be and the same is hereby granted and that the sheriff's sale set for July 7, 1983 is hereby cancelled.
2. That the Husband shall pay to the law firm of Young, Stern & Tannenbaum P.A., within fourteen (14) days of the date of this order, the sum of Twenty-five Thousand ($25,000) Dollars as and toward the outstanding judgment for attorney's fees due and owing Young, Stern & Tannenbaum, P.A.
3. The Husband has advised that he was required to borrow that money from a third source and that third source shall receive and be entitled to place a mortgage for the money lent on the Fort Lauderdale property.
4. That the home shall be listed with IVA ROBERTS and all efforts made to sell the home shall be done and that IVA ROBERTS is herein ordered to convey any offers of sale on the property to both the Husband and Young, Stern & Tannenbaum, P.A. If an offer is made and the Husband and Young, Stern & Tannenbaum, P.A. agree upon same the Court shall ratify said sale; however, if the parties cannot agree on the sale of the subject property the matter shall be submitted to the Court for determination.
5. Further, the Husband shall pay to the law firm of Young, Stern & Tannenbaum, P.A. the additional sum of One Thousand ($1,000) Dollars per month toward the outstanding judgment of attorney's fees in favor of Young, Stern & Tannenbaum, P.A.."
[3] The motion reads as follows:

"Petitioner/Husband moves this Honorable Court for supplemental relief and in support thereof would allege as follows:
1. Pursuant to Order Granting Motion for Relief dated July 5, 1983 this Court appointed Iva Roberts to make all efforts to sell the home in Fort Lauderdale, Florida forthwith and that Iva Roberts is ordered to convey any offers of sale on the property to both the Husband and Young, Stern & Tannenbaum, P.A.
2. Thereafter, the Court order states that if an offer is made and the Husband and Young, Stern & Tannenbaum agree upon same the Court shall ratify said sale; however, if the parties cannot agree on the sale of the subject property the matter shall be submitted to the Court for determination.
3. In fact an offer to purchase has been made and conveyed to both the Husband and Young, Stern & Tannenbaum, P.A.
4. Attached hereto and made a part hereof is a copy of the offer that was submitted to Young, Stern & Tannenbaum, P.A..
5. Although there is no immediate cash in a lump sum that is received from the sale of the property, it does generate monthly income that both keeps the Husband's tenuous financial position in check and also will provide ongoing monthly income to Young, Stern & Tannenbaum, P.A. pending further hearings and relief."
[4] The appellants recognized this deficiency by filing a motion for the enforcement thereof. The cause being in equity, the enforcement could have been under the traditional equity power or by execution at law.