690 So.2d 678 (1997)
Jeffrey H. MERIAN, Appellant,
v.
Suzanne M. MERHIGE, Appellee.
No. 95-2689.
District Court of Appeal of Florida, Third District.
March 26, 1997.
*679 Peter A. Collins and Mary Raymond, Miami, for appellant.
Fred M. Dellapa, Coral Gables, for appellee.
Before COPE, GERSTEN and SHEVIN, JJ.
COPE, Judge.
Appellant-father Jeffrey H. Merian appeals an order entered on report of the General Master in post-dissolution of marriage proceedings. We affirm in part and reverse in part.
During the marriage of the father and the appellee-mother Suzanne M. Merhige, one child was born. The parties divorced in 1986. By agreement, the mother was to be the primary residential parent and the father was to pay an agreed amount of monthly child support. The parties' agreement, which was incorporated into the final judgment dissolving marriage, provided in part:
The Husband shall pay for any and all schooling of the minor child, whether public or private, and for all school supplies and incidentals needed by the child in connection thereof. It is recognized and acknowledged by the Parties that the current intention is that the child be educated in private school from preschool through high school.
(Emphasis added). At the time of the dissolution of marriage the child was two years old. She was enrolled in day care at a cost of $200 per month.
In 1987 the child began Montessori School. The tuition was substantially higher.
Ultimately the mother filed a motion for enforcement of child support and contempt. The General Master found that the father had financial difficulties in 1988 and 1989, but that by 1991 and 1992 his financial position had improved. The General Master rejected the father's claim that there had been an oral modification of the child support agreement. In her 1993 order, the Master assessed arrearages through June 1, 1993, established a payment schedule, and directed that there be an income deduction order. The father's exceptions were denied.[1]
*680 In August 1993, the father filed a motion to modify his child support obligation. The father also filed a motion to enforce his visitation rights. The General Master refused to hear the father's motions on the theory that the General Master (and trial court) could not exercise jurisdiction while the father was pursuing an appeal from the 1993 order.
Subsequently, the mother filed another motion for enforcement of child support and contempt. The mother sought reimbursement for Montessori School tuition and supplies for the 1993-94 and 1994-95 school year, as well as other relief.
In May 1995, the General Master conducted a hearing on the mother's motion for enforcement of child support and contempt. The General Master again refused to hear any of the father's motions, in the belief that the Master could not properly do so while the father's appeal was pending.
After an evidentiary hearing, the Master concluded that the father did not have the ability to pay the combined total of child support, arrearages, and tuition. Inconsistently, the Master then found the father to be in willful contempt. The Master modified the payment schedule and directed that a new income deduction order be entered. The father's exceptions were denied, and the father has appealed.

I.
The General Master erred by refusing to hear the father's pending motion to enforce visitation and motion for modification of child support.

A.
Florida Rule of Appellate Procedure 9.600(c) specifies that in family law matters, the trial court retains jurisdiction to enforce an order which is being appealed, while the appeal is pending. Rule 9.600(c) currently provides:
RULE 9.600. JURISDICTION OF LOWER TRIBUNAL PENDING REVIEW
. . . .
(c) Family Law Matters. In family law matters:
(1) The lower tribunal shall retain jurisdiction to enter and enforce orders awarding separate maintenance, child support, alimony, attorney's fees and costs for services rendered in the lower tribunal, temporary attorney's fees and costs reasonably necessary to prosecute or defend an appeal, or other awards necessary to protect the welfare and rights of any party pending appeal.
. . . .
(3) Review of orders entered pursuant to this subdivision shall be by motion filed in the court within 30 days of rendition.[2]
To illustrate, suppose that the trial court enters a final judgment of dissolution of marriage which requires child visitation, child support, alimony, and the sale of the matrimonial home. A notice of appeal is filed, but there is no stay pending appeal. Rule 9.600(c) provides that the trial court retains jurisdiction to enforce the terms of the final judgment pending appeal. Thus, if the visitation order is disobeyed, or support is not paid, or a party fails to comply with the order directing sale of the matrimonial home, the trial court has jurisdiction to entertain an appropriate motion for enforcement or contempt.[3] Fla.R.App.P. 9.600(c)(1). If the trial court enters an enforcement or contempt order and the losing party desires appellate review, the losing party seeks review by filing a motion in the appellate tribunal within thirty days. Fla.R.App.P. 9.600(c)(3).
The analysis is similar in postjudgment proceedings. By her 1993 order, the General Master had assessed arrearages against the father, established a payment schedule, and directed that there be an income deduction order. After the father's exceptions were *681 denied by the trial court, the father appealed. There was no stay pending appeal. Under the terms of Rule 9.600(c), the trial court retained jurisdiction to enforce the order pending appeal. The trial court had the authority (if needed) to see that the income deduction order was duly entered, and that the installments were being paid as required.
Thus, the purpose of Rule 9.600(c) is to allow the trial court in family matters to enforce an order while that same order is being appealed.[4] It applies where, but for the existence of Rule 9.600(c), the trial court would have been divested of jurisdiction over the order when the notice of appeal was filed. See Fla.R.App.P. 9.600(c)(1) (authorizing orders "necessary to protect the welfare and rights of any party pending appeal.").

B.
In the present case, the parties are in post-dissolution proceedings. The father had filed a motion to enforce his visitation rights. It is true that the father had a pending appeal of the 1993 arrearage order. However, that order did not involve any child visitation issue.[5] The father was, in fact, attempting to enforce visitation rights granted to him by the 1986 final judgment. For purposes of post-dissolution proceedings, the pendency of a post-dissolution appeal on one issue (child support arrearages) did not have any effect on the father's ability to move for enforcement of the 1986 judgment on a different issue (child visitation).[6]

C.
The Master also had jurisdiction to entertain the father's motion for child support modification. The father's pending appeal assessed an arrearage as of June 1, 1993. In August 1993 the father filed a motion for modification, seeking a change in his child support obligation in August 1993 and thereafter.
There was no overlap between the order being appealed and the motion for modification. The 1993 arrearage order covered the time period through June 1, 1993. The motion for modification covered a time period after June 1, 1993. The granting of modification relief prospectively would have no effect on the order being appealed.[7]
The Master should have heard the father's motion for modification.

II.
The General Master considered only the mother's motion for enforcement of child support and contempt. The Master found the husband in contempt and assessed an additional arrearage of $15,664.09 for private school tuition and related expenses. The Master reconfigured and increased the income deduction order.

A.
Assuming for the moment the accuracy of the General Master's calculation of the father's income and expenses,[8] it is clear that the father did not have the ability to pay that which he had been ordered to pay. The finding of willful contempt must, therefore, *682 be reversed. See Bowen v. Bowen, 471 So.2d 1274, 1278-80 (Fla.1985).
The Master reasoned that the father could have paid the private school tuition if he had stopped paying the previously ordered monthly arrearage payments to the mother. On that theory, the Master concluded that the father should be held in contempt. That reasoning was erroneous. Neither the Master nor the trial court had given the father an instruction that, in the event he did not have the ability to pay all of the required amounts, which payment item should be given priority. In fact, the Master's 1993 order directed that the father's monthly child support and monthly arrearage payment would be automatically deducted from his pay by income deduction order. By so ordering, the Master had assured that current child support and arrearage installments would be paid automaticallywhich left a shortfall in the ability to pay private school tuition. The order holding the father in contempt on the basis of nonpayments occurring in the period June 1993 though May 1995 is reversed with directions to enter judgment in favor of the father on the willful contempt issue.[9]

B.
We likewise reverse the arrearage order and the increased income deduction order. These were entered to enforce the existing child support order. However, the Master should have considered the father's motion for modification, which covered the same time period as the mother's motion for enforcement. The previous income deduction order shall be reinstated pending hearing of the motion for modification.

C.
Because there must be further proceedings on the motion for modification, we comment on the father's claim that there is an absence of competent substantial evidence, or calculation errors, with respect to certain of the income and expense findings contained in the General Master's order.
The father argues that the General Master's estimate of his net monthly income beginning in 1995 exceeds that which is supported by the evidence. It is clear that the Master's finding regarding 1995 income is an estimate based on pay records covering only the first five weeks of 1995. For purposes of the motion for modification, on remand the actual income figures are now available and should be used instead of the Master's estimate.
The Master appears to have disallowed as an expense all or part of the father's payments on credit card debts. The Master found that most of the father's living expenses were very modest, but went on to say that "certain credit expenses could be consolidated through Consumer Credit counseling or some other plan." If this observation was intended merely as a suggestion that the father explore debt consolidation, we would have no quarrel with it. However, it appears that this observation was the basis for disallowing some or all of the father's monthly payments toward credit card balances. Neither the order nor the record contain any indication that debt consolidation was feasible in his case (i.e., whether he could qualify for a debt consolidation loan, in view of his financial situation), nor of the amount of savings which might be produced thereby. If there is to be a reduction of the allowance for bona fide credit card indebtedness on a debt consolidation theory, there should be some basis in the record demonstrating that such consolidation is feasible and what savings might be realized.
Among the father's expenses he listed a large monthly payment toward attorney's fees owed to his counsel. The Master eliminated any allowance for the attorney's fee debt, noting that "Attorney Fees do take a back seat to the child support...." We agree that the trial court can order a payment schedule to assure that support payments are given priority. See Bickett v. Bickett, 579 So.2d 149, 150 (Fla. 3d DCA 1991); Young, Stern & Tannenbaum, P.A. v. Ernst, 453 So.2d 99, 102-03 (Fla. 3d DCA *683 1984). However, we see no basis for saying that the attorney's fee allowance should be zero. At least a modest monthly allowance should have been granted.

III.
The father argues that he was erroneously found in contempt for failure to make certain medical payments for the child. The father misreads the Master's order. There was a dispute between the parties regarding the procedure to be followed in submitting insurance claims for the child, who is covered by the father's health insurance. The Master clarified that procedure and directed that certain claims be submitted by a date certain. The father was not held in contempt on this issue.

IV.
The order under review is reversed with the exception of the provisions relating to insurance claims. The cause is remanded with directions to conduct a prompt hearing on the father's motions for modification and to enforce visitation.
Reversed and remanded.
NOTES
[1] On appeal to this court, the arrearage amounts were reduced. Merian v. Merhige, 671 So.2d 175 (Fla. 3d DCA 1996). The remainder of the order was affirmed.

The father prevailed on an earlier procedural appeal. Merian v. Merhige, 641 So.2d 475 (Fla. 3d DCA 1994).
[2] The quoted version of Rule 9.600(c) took effect January 1, 1997. Amendments to the Florida Rules of Appellate Procedure, 685 So.2d 773, 829-30 (Fla.1996). The prior version of the rule was substantially identical to the quoted passages.
[3] The motion for enforcement or contempt could, of course, be referred to the General Master.
[4] This discussion assumes that the appellate tribunal has not issued a stay pending appeal. If the trial court has entered a stay, the trial court has continuing jurisdiction to modify or vacate the stay. Fla.R.App.P. 9.310(a). If the appellate tribunal has entered a stay then, of course, the terms of the stay order would prevail over the terms of Rule 9.600(c).
[5] If the order being appealed had covered the visitation issue, then the trial court (and General Master) would have had jurisdiction under Rule 9.600(c), to entertain a petition for enforcement of that order pending appeal.
[6] Chapter 61 is specific that visitation cannot be withheld because of a claim of nonpayment of child support. § 61.13(4)(a), Fla.Stat.
[7] There would, of course, be a jurisdictional problem if the August 1993, motion for modification sought modification retroactive to a date prior to June 1, 1993. If the father sought such relief (which he did not), it could not be entertained for the period prior to June 1, 1993, absent a relinquishment of jurisdiction.
[8] The father contends that some of the findings relating to his 1995 income and expenses are not supported by competent substantial evidence and overstate his net income. Certain of these claims have merit. See infra section IIC.
[9] In view of the reversal on the merits, we need not address the father's procedural objection to the imposition of the revised income deduction order.