426 So.2d 992 (1983)
Avalon L. SEVERS, Appellant,
v.
Dwight W. SEVERS, Appellee.
No. 81-899.
District Court of Appeal of Florida, Fifth District.
January 5, 1983.
Rehearing Denied February 10, 1983.
Bruce M. Bogin of Bogin, Munns & Simon, Orlando, for appellant.
Frank J. Griffith, Jr., of Nabors, Potter, McClelland, Griffith & Jones, P.A., Titusville, for appellee.
COBB, Judge.
On appeal the wife seeks a greater alimony award, and asks that it be permanent. She also asserts that the lower court erred in not requiring the husband to maintain life and medical insurance payable to her and the children; in not granting her sufficient attorney fees; and in not granting her a special equity in the "property" of the husband's professional degree and license, valuated by capitalizing his future earning capacity.
The facts elicited below show that there are three minor children of this 15-year marriage. The parties were co-owners of a marital home in Titusville. The wife has a teaching degree, and worked as a teacher to assist her husband in achieving his law degree. After his graduation and entry into private practice, the wife abandoned her career and devoted full time to being a housewife and mother. The evidence of the husband's earning capacity, based on a net average for the past five years, shows an annual income of $31,300. The wife has currently maintained her teaching certificate in the State of Florida.
At the time of the dissolution the parties were co-owners of the marital home, a Datsun truck, a 1979 Datsun car and household furnishings. The husband's individual assets were law firm stock ($15,000), law firm property ($24,000), an orange grove (equity of $50,000), a law firm pension plan ($27,000), cash in the amount of $7,000, orange grove equipment valued at $2,500, and a 1980 Datsun car, motorcycle and boat (aggregate value of $7,000). The wife's individual assets were a mortgage note receivable ($17,000), cash in the amount of $5,000, and a certificate of deposit of $10,000.
In the final judgment the court dissolved the marriage of the parties and equally divided custody of the minor children between the parents. The husband is required *993 to pay $450 per month to the wife as child support. The court awarded rehabilitative alimony of $300 per month to the wife for 36 months, and awarded lump-sum alimony of one-half of the husband's interest in the marital home. The parties have stipulated to sell the home. The wife, therefore, would be receiving 75% of the proceeds and the husband would receive 25%. The court also granted the wife as lump-sum alimony the husband's one-half interest in the Datsun automobile and his one-half interest in the sterling silver (value claimed to be $6,400). The marital home was to be placed for sale at $175,000, and the briefs of the parties suggest to us that it will be sold for $166,500. Pending the sale of the marital home, the payments for mortgage, taxes, insurance and any major repair items would be equally split between the parties. The court divided certain properties that the parties were both claiming. The court awarded as a contribution toward payment for costs and services to the wife $6,500 as attorney fees, and $1,155.35 as costs. The court ordered the husband to pay certain medical bills of the wife. The court retained jurisdiction of the cause and the parties and their minor children for all legal purposes.
Based upon a proposed sale of the marital home at $166,500 with a net of $40,000 down and a mortgage receivable of $65,000 payable over 20 years at 12% interest, the relative financial positions of the parties, resulting from the trial court's judgment, is as follows:

Wife's Post-Dissolution Assets
 Cash  Brad properties account $ 900.00
 Sale of marital home  cash 30,000.00
 Mortgage received  marital home
 ($537 per mo.  12%  20 years) 48,750.00
 Mortgage received  Brad properties
 ($200 per mo.  25 years) 17,500.00
 Merrill, Lynch money market
 account 15,000.00
 1979 Datsun 4,000.00
 Household furnishings 1,500.00
 Sterling silver 6,400.00
 ___________
 TOTAL NET WORTH $124,050.00
Husband's Post-Dissolution Assets
 Law firm interest $ 15,000.00
 Law firm property 24,000.00
 Orange grove 50,000.00
 Law firm pension plan 27,000.00
 Cash  savings account 7,000.00
 Marital home  cash  $10,000 less
 Appellant's attorney's fees of
 $7,658.34 2,341.66
 Mortgage receivable  marital home
 1/4 16,250.00
 1978 Datsun truck 3,500.00
 Orange grove equipment 2,500.00
 Household furnishings 1,500.00
 1980 Datsun, motorcycle and boats 7,000.00
 ___________
 TOTAL NET WORTH $156,091.66

If the law firm stock and property were excluded from the husband's net assets because they have no current market value, then the wife's assets would be $124,050 and the husband's $115,091.66. The wife has no debt where the husband has a mortgage on the grove and on the law firm property.
The relative income positions of the parties as a result of the final judgment and payment of the alimony and support obligations are as follows:

Husband's Income
 Net monthly salary $2,194.59
 Car allowance 250.00
 Mortgage receivable from 1/4 of
 house mortgage 178.00
 _________
 Net Income $2,622.59
 Less rehabilitative alimony 300.00
 Less child support 450.00
 _________
 Adjusted net monthly income $1,972.59
Wife's Income (Without Working)
 Rehabilitative alimony $ 300.00
 Child support 450.00
 Brad mortgage (25 years) 200.00
 Marital home mortgage (20 years) 537.00
 Merrill, Lynch account ($15,000 at
 15% interest) 189.00
 _________
 Total monthly income $1,666.00

(The above income for husband and wife assumes the marital residence is sold as stated above.)
Much of the wife's income is either not taxable or subject to capital gains treatment or not even capital gains treatment if the wife repurchases a home. The wife's monthly income does not involve her working, whereas the husband must continue *994 working and each party shares equally in the responsibility of rearing the minor children. The above monthly income is predicated upon the wife utilizing the $30,000 she would receive from the sale of the marital residence to apply toward another residence. If the wife chooses to invest this $30,000 and rent, then she would have $350 a month additional income, or a total of $2,016 per month. The husband was renting at the time of the final hearing.
The wife's claims in regard to medical insurance are not supported by the facts. Her claim in regard to life insurance payable to her is not supported by the law. See Eagan v. Eagan, 392 So.2d 988 (Fla. 5th DCA 1981). The record fails to reveal whether or not the husband currently maintains life insurance payable to the children.
The trial court awarded a fee to counsel for the wife of $6,500. This amount does not constitute an abuse of the broad discretion vested in the trial court in regard to attorney fees. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Hill v. Hill, 326 So.2d 207 (Fla. 1st DCA 1976).
The wife's claim to a vested interest in the husband's education and professional productivity, past and future, is unsupported by any statutory or case law. Indeed, such an award by the trial court would transmute the bonds of marriage into the bonds of involuntary servitude contrary to Amendment XIII of the United States Constitution.
There was neither testimony nor argument presented to the trial court to support permanent alimony. Indeed, one of the wife's own witnesses, a vocational rehabilitation counselor, testified at trial, without contradiction, that the wife could be rehabilitated and earn approximately $14,000 per annum within two years. In closing argument, counsel for the wife specifically requested an award of rehabilitative alimony for three years in the amount of $1,000 per month, apparently recognizing that Florida law would not support an award of permanent alimony under the facts of this case. As stated in Canakaris, 382 So.2d at 1202:
[W]here the action of the trial judge is within his judicial discretion, as in the establishment of the amount of alimony or award of child custody, the manner of appellate review is altogether different. Judicial discretion is defined as:
The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.
1 Bouvier's Law Dictionary and Concise Encyclopedia 804 (8th ed. 1914). Our trial judges are granted this discretionary power because it is impossible to establish strict rules of law for every conceivable situation which could arise in the course of a domestic relation proceeding. The trial judge can ordinarily best determine what is appropriate and just because only he can personally observe the participants and events of the trial.
We cite with favor the following statement of the test for review of a judge's discretionary power:
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

Delno v. Market Street Railway Company, 124 F.2d 965, 967 (9th Cir.1942).
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision *995 fails to satisfy this test of reasonableness. [Emphasis added.]
Utilizing the foregoing test from Canakaris, can we say that the judgment of the trial court, viewed in its totality, reflects a view which no reasonable man would take? To so hold is to say, as a matter of law, that the wife has been "shortchanged." See Canakaris, 382 So.2d at 1204. She started the marriage with a moderate annual income from teaching. She now has a three-quarter interest in a $175,000 home, which apparently will be sold for $166,500; some $30,000 in liquid assets; sterling silver worth $6,400; $450 per month child support; the same teaching certificate; and $300 alimony per month for three years. She was 37 years of age at the time of final hearing, and in good health. To require the trial judge to increase the award to the wife cannot be reconciled with the clear directive from the Florida Supreme Court to the district courts of appeal in Canakaris to honor the superior vantage point of the trial court in domestic relation proceedings. As pointed out by the Florida Supreme Court in Canakaris:
Dissolution proceedings present a trial judge with the difficult problem of apportioning assets acquired by the parties and providing necessary support. The judge possesses broad discretionary authority to do equity between the parties and has available various remedies to accomplish this purpose, including lump-sum alimony, permanent periodic alimony, rehabilitative alimony, child support, a vested special equity in property and an award of exclusive possession of property. As considered by the trial court, these remedies are interrelated; to the extent of their eventual use, the remedies are part of one overall scheme. It is extremely important that they also be reviewed by appellate courts as a whole, rather than independently.
382 So.2d at 1202.
The Florida Supreme Court again addressed the question of judicial discretion of the trial courts in the case of Weiner v. Weiner, 403 So.2d 408 (Fla. 1981). In that case, the Supreme Court reversed the Third District which had increased the amount of alimony from $750 a month to $1,200 a month. In Weiner, the court said, at page 409:
We agree that no abuse of the trial court's discretion has been shown and that the district court improperly substituted its judgment for that of the trial court regarding the award of periodic alimony....
See also Herzog v. Herzog, 346 So.2d 56 (Fla. 1977); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976).
The judgment of the trial court is
AFFIRMED.
FRANK D. UPCHURCH, Jr., J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I dissent in this case because I think the lower court's rehabilitative alimony award of three hundred dollars ($300) per month for thirty-six (36) months is an abuse of discretion. The majority says the wife's post-dissolution income will be one thousand six hundred sixty-six dollars ($1,666) per month. But this figure includes four hundred fifty dollars ($450) child support, and the three hundred dollars ($300) rehabilitative alimony will terminate in three years.
There was no testimony that the wife was presently able to support herself. She had a teaching degree and taught school at the beginning of the parties' marriage to help support them while the husband went to law school. Thereafter, she was a full-time wife and mother, and she raised the parties' three children. In the year prior to the dissolution, the husband earned four thousand five hundred dollars ($4,500) per month from his law firm. The parties enjoyed a comfortable lifestyle.
Mr. Severs will continue to enjoy a lifestyle as good as, if not better than, in the past. However, Mrs. Severs' lifestyle necessarily will drastically reduce because there is little likelihood she can ever earn *996 an income sufficient to allow her to maintain a lifestyle close to the one she enjoyed during the marriage. As the expert witness testified, if she uses her cash assets ($15,000 over 2 years) for reschooling, her gross salary will probably be only thirteen thousand five hundred dollars ($13,500) per year. Rulings like the one in this case make the role of wife and homemaker a very precarious business, and not one a parent could in good conscience advise a daughter to choose.
It appears to me this case is one in which permanent alimony should have been awarded. In McAllister v. McAllister, 345 So.2d 352 (Fla. 4th DCA 1977), the wife worked, as did Mrs. Severs, to help her husband obtain his professional degree, and then she played a homemaker role for many years raising their children. In McAllister the court said rehabilitation would result at best in the wife earning only a modest income. It reversed the award of rehabilitative alimony and directed it be made permanent and sufficient to allow Mrs. McAllister a lifestyle commensurate with the one established during marriage. That is what I think should have occurred here.
In spite of the majority's reference to involuntary servitude, I think it would be proper for a court to base a permanent alimony or lump sum alimony award on the fact that one spouse helped support and assist the other in obtaining a professional degree.[1] If the majority decision becomes the prevailing law on this point, the young should take note: "Putting a spouse through" will become a remarkably poor personal investment.
NOTES
[1] § 61.08(2)(f), Fla. Stat. (1981); see Wisner v. Wisner, 129 Ariz. 333, 631 P.2d 115 (Ariz. Ct. App. 1981).