557 So.2d 880 (1990)
Leonard P. CONTELLA, Petitioner,
v.
Alice St. Onge CONTELLA and Walter J. Gallagher, Sheriff of Orange County, Florida, Respondents.
No. 89-2225.
District Court of Appeal of Florida, Fifth District.
February 1, 1990.
Rehearing Denied March 15, 1990.
*881 Robert L. "Mac" McLeod, II, of Walton, Townsend & McLeod Palatka, for petitioner.
Andrea L. Cain and John M. Cain of Cain & Ewald, Orlando, for respondents.
HARRIS, Judge.
Leonard P. Contella petitions this court for a writ of habeas corpus. He contends that he was improperly denied the opportunity to prove at his contempt hearing that he lacked the present financial ability to comply with the court's support order in his dissolution of marriage case.[1]
Judge Cornelius issued a rule to show cause directing Contella to show why he should not be held in indirect criminal contempt for willfully violating the court's support order. After an extended hearing the court found Contella had "willfully failed and refused" to comply with the order and that he "did affirmatively act to divest himself of assets and property with which he could have complied."[2] The court also found Contella had in the past and at the time of the hearing the ability to comply with its order. The court then sentenced Contella to 179 days in jail but deferred the sentence for approximately two weeks in order to give Contella time to purge. The judge also continued the option to purge even after incarceration.
Contella moved for an emergency stay pending review and, in Judge Cornelius' absence, Judge Powell modified the terms of the previous order to require an additional hearing prior to incarceration pursuant to Cokonougher v. Cokonougher, 543 So.2d 460 (Fla. 2nd DCA 1989). When Contella failed to "purge", a subsequent hearing was held before Judge Kaney which resulted in the action herein being challenged.[3] Judge Kaney found that the original Cornelius order held Contella in criminal contempt and that, therefore, additional testimony as to his present ability to pay would be irrelevant. Judge Kaney determined that since Contella failed to comply with the conditions of the deferred sentence for criminal contempt (compliance with the purge conditions), he should immediately begin serving his jail term. We agree.
Clearly Contella was brought before the Cornelius court to be tried for criminal contempt  not civil. Contella was so notified, given the requisite statement of *882 his rights, and was represented at the hearing. The finding that Contella intentionally divested himself of assets in order to avoid his financial obligation to his family justified a finding of criminal contempt. See Bowen v. Bowen, 471 So.2d 1274 (Fla. 1985). The finding of present ability to pay perhaps encouraged the court to pattern the sentence in a way to solve an ongoing domestic problem, but so far as the criminal contempt was concerned it was surplusage. If the law imposes the obligation to enforce support orders upon the trial court, it must also give it the authority to pattern its orders to achieve that purpose. Having found criminal contempt the court could have punished Contella with straight jail time; it chose instead to encourage Contella to re-acquire the divested assets and meet his obligation to his family. If he could not re-acquire the assets then, and with no further ado, incarceration should proceed. No further hearing should be required. Contella is being punished not for his inability to pay support, but for his inability or unwillingness to right an intentional wrong.
While it is essential that a civil contempt order contain a purge provision, why is it wrong to pattern a criminal contempt order to include a purge provision when this might achieve a more desirable result?[4] By facing a sure jail term, the respondent in such a case would be highly motivated to use his best efforts to correct the situation he deliberately brought about. Instead Contella argues that since the trial court gave him the privilege of purging (not at all necessary in this case) he must now be given the opportunity to show that he lacks the present ability to purge. His position is not unlike the young man who murders his parents and pleads for mercy because he is an orphan. He claims he cannot be jailed for his inability to provide the court-ordered support because he has voluntarily divested himself of the assets which would have provided that support.
Application DENIED.
COWART, J., concurs and concurs specially with opinion.
DAUKSCH, J., dissents with opinion.
COWART, Judge, concurring specially.
Under Florida law, criminal contempt is a common law crime.[1] The purpose of the criminal proscription is to punish and deter conduct which intentionally and unlawfully assails, disparages, discredits, or disregards the authority or dignity of a duly constituted court or judge. Because of the nature of punishment that may be administered upon a conviction of criminal contempt, criminal contempt proceedings are subject to court rules of procedure for criminal cases and are also subject to the constitutional limitations applicable to criminal cases including the due process requirement of a burden of proof "beyond a reasonable doubt."
On the other hand, civil contempt is, in effect, a special remedy of an equity court to coerce obedience to its orders which direct a civil litigant to do, or abstain from doing, an act or acts which the equity court has adjudicated that some other litigant is equitably entitled to have done or not done. The equitable rights enforced by civil contempt are usually those which require the defendant to do some act other than the payment of money, such as, in injunction and specific performance actions, but the remedy is also available to coerce the duty to pay money for the support of legal dependents because of the special social problem involved and the fact that such marital duties and the rights of infants are peculiarly within the jurisdiction and concern of equity courts.
The objective and design of a civil contempt proceeding is to coerce a future action of a civil litigant while the objective of *883 criminal contempt is to punish or deter a defendant for a past criminally offensive act against a court. While a particular proceeding may comply with all legal prerequisites for both civil and criminal contempt, Judge Dauksch's dissent is correct in observing that the trial court has confused the conceptual differences between criminal and civil contempt and in opining that it is far better not to confuse those concepts in order to avoid the confusion that results such as in this case.
The ultimate true legal nature and character of a contempt proceeding as being criminal or civil is not controlled by name or form or the intent of the movant[2] but by the substance of the judicial action that follows a finding of contempt: (1) if the judicial act is designed to coerce a future act of one litigant for the benefit of another litigant in a civil case, the matter obviously has resolved into a civil contempt remedy; and (2) if the result of the judgment is unconditional, unavoidable punishment for a completed act, then the only proper purpose of the judgment is to vindicate the integrity, authority, or dignity of the court and to deter similar future conduct, and the nature and character of the contempt judgment and sentence is criminal.[3] Contempt proceedings possess characteristics which in some cases render them more or less difficult of definite classification as being either civil or criminal in their nature. Nevertheless, the usual determinative indicia is whether the order finding contempt and directing confinement contains, or does not contain, a provision that the defendant may, by doing the specified act which is being judicially coerced, purge himself of the contempt and be released from any coercive confinement. A purge provision is essential in a civil contempt order[4] and because it conditions, and permits the defendant to avoid punishment, such a purge provision is the antithesis of a sentence for criminal contempt.
The Florida Supreme Court has held that where the contempt consists of the failure to perform an act or duty that is within the power of the offender to perform, the contempt order, whether adjudicating civil or criminal contempt, is void unless the order contains a finding of the trial court that it is within the power of the contemnor to comply or, as to criminal but not civil contempt, a finding that that contemnor has previously had the power to comply but divested himself of that ability through his fault or neglect with design to frustrate the intent and purpose of the court order. Bowen v. Bowen, 471 So.2d 1274 (Fla. 1985).[5]
This brings up another rather confusing factor in this case. Usually, a trial judge finds the contemnor to have the ability to comply with the purge provision or, in the alternative in criminal contempt proceedings, the trial court finds that while the offender does not then have the power to comply with the court order, that the contemnor has previously had that power and intentionally or negligently divested himself of the means to comply with the court order. In this particular case, Judge Cornelius' confinement order seems to find *884 that while Contella had affirmatively acted to divest himself of assets and property with which he could have complied, that Contella had, in the past and at the time of the hearing, the ability to comply with the court's order.[6] This is somewhat of an anomaly and appears inconsistent unless it was the trial court's finding that while Contella had divested himself of assets, Contella had the existing ability to reacquire the divested assets and thereby reacquire the ability to comply with the court's support order.[7] If the trial court found that although Contella had intentionally divested himself of some assets yet he still possessed sufficient assets with which to purge himself of contempt, then it was unnecessary to make any inquiry or adjudication with respect to the divestment of assets.
In any event, I concur in the denial of Contella's petition for writ of habeas corpus not by viewing the contempt as a valid criminal contempt judgment and sentence and treating the purge provision as surplusage but rather because, viewing this as a civil contempt case, Contella was not entitled to a second opportunity before Judge Kaney to prove that he lacked the present financial ability to comply with the original support order. The original judgment establishing the duty and amount of support to be paid created a presumption that Contella had the ability to pay that amount.[8] When Contella was cited with contempt for failure to obey the original support order, one of the issues before Judge Cornelius was whether or not Contella had the ability to comply with the court order. Judge Cornelius found that Contella still had, at the time of that hearing, the ability to comply with the original support order. This finding was not in any way vitiated or diminished by reason of the fact that Judge Cornelius deferred the imposition of 179 days in jail for approximately two weeks in order to give Contella time to purge himself of the contempt finding.
In Hilson v. Hilson, 145 So.2d 557 (Fla. 3d DCA 1962), the trial court order found the defendant in contempt and found that he was in arrears in a stated sum but then provided that he would have 90 days in which to make "a substantial payment on the arrearage." The appellate court held that the language "substantial payment" was indefinite and defective.
In Cokonougher v. Cokonougher, 543 So.2d 460 (Fla. 2d DCA 1989), the trial court found the defendant in arrears in a certain amount and directed him to pay that amount on or before the lapse of 23 days and then generally stated that if the defendant failed to comply with that order, "he shall be found to be in willful contempt of this court and shall be faced with the perils of incarceration." No exact term of confinement was specified. In Cokonougher the court applied Hilson and found the order vague and deficient. The deficiency in the order in Cokonougher was that the term of confinement was not stated but the opinion rambles off on the husband's argument that the order did not contain a finding that the husband had the present ability to pay the purge provision as required by Bowen v. Bowen, 471 So.2d 1274 (Fla. 1985).
The order in this case does not contain the deficiencies of concern in Bowen, Hilson or Cokonougher in that Judge Cornelius' order expressly finds that "the husband has in the past and presently has the ability to comply with said orders and is wilfully refusing to do so." Further, Judge Cornelius' order prescribes a definite 179 days as punishment for contempt and contains a purge provision and the precise sums and amounts necessary for the husband to pay in order to purge himself is subject to exact calculation under the provisions of the order.
*885 Judge Cornelius' order dated July 21, 1989 ordered the husband to present himself to the sheriff on or before 8 o'clock a.m. on the 8th day of August, 1989, to be confined if he had not theretofore purged himself and the order further prescribed that the husband could purge himself during confinement and the sheriff would immediately release him from custody. This order for contempt and commitment thereon is not indefinite or reversible merely because the contemnor was given 18 days grace before commitment.[9] This grace period was nothing but a benefit to the contemnor, as to which he should not be heard to complain, and there is no good reason to hold, at his behest, that the order is defective merely because of this leniency towards him in this particular. The contemnor had one full hearing before Judge Cornelius as to all the matters essential to a proper finding of civil contempt and he was not entitled to another, second, hearing on the same issue of his ability to purge himself of his contempt in failing to obey the original support order.
DAUKSCH, Judge, dissenting.
I respectfully dissent.
In my opinion the lower court has mixed two procedures and sentences. A purge provision is required in civil contempt, where the end to be reached is the enforcement of a court order. In criminal contempt the end to be reached is to vindicate the authority of the court. Civil contempt is to coerce, criminal contempt is to punish. They should not be mixed. I would grant the writ and order that petitioner be released until the court holds a proper hearing and issues a proper disposition, either civil contempt with a purge provision, or criminal contempt with no purge permitted.
NOTES
[1] Here he is referring to the contempt hearing held before Judge Kaney in which Judge Kaney determined that Contella was in criminal contempt for failing to comply with the previous order of commitment for criminal contempt entered by Judge Cornelius.
[2] Although not entirely clear from the record, it appears that Contella transferred $274,108.69 to a third party trustee.
[3] Judge Cornelius had recused himself from further proceedings.
[4] See Baker v. State, 239 So.2d 153 (Fla. 1st DCA 1970). In Baker the appellate court found Baker in "direct contempt" for his failure to perform his assigned duties as appellate counsel. However the court gave him additional time to "purge" by properly performing his duties, taxed costs against him and deferred "further punitive action" to see how he complied with the purge provision.
[1] Aaron v. State, 284 So.2d 673 (Fla. 1973).
[2] The civil litigant who is the prospective beneficiary usually initiates a civil contempt action. A criminal contempt action should be initiated in the name of the State by one, such as the judge or public prosecutor, with authority to act on behalf of the State.
[3] Demetree v. State ex rel Marsh, 89 So.2d 498 (Fla. 1956); Seaboard Air Line R. Co. v. Tampa Southern R. Co., 101 Fla. 468, 134 So. 529 (1931); In re Tierney, 328 So.2d 40 (Fla. 4th DCA 1976); In re S.L.T., 180 So.2d 374 (Fla. 2d DCA 1965); Ballengee v. State, 144 So.2d 68 (Fla. 2d DCA 1962).
[4] Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977); Demetree v. State ex rel Marsh, 89 So.2d 498 (Fla. 1956); Knowles v. Knowles, 522 So.2d 477 (Fla. 5th DCA 1988), rev. denied, 531 So.2d 1354 (Fla. 1988); Meadows v. Bacon, 489 So.2d 850 (Fla. 5th DCA 1986); Allman v. Johnson, 488 So.2d 884 (Fla. 5th DCA 1986); Hawkins v. Hawkins, 430 So.2d 1002 (Fla. 4th DCA 1983); Carter v. State, 409 So.2d 127 (Fla. 5th DCA 1982); Damkohler v. Damkohler, 336 So.2d 1243 (Fla. 4th DCA 1976); Carter v. Easterling, 362 So.2d 356 (Fla. 1st DCA 1978); State ex rel. Pipia v. Buchanan, 168 So.2d 783 (Fla. 3d DCA 1964); Wallens v. Buchanan, 168 So.2d 687 (Fla. 3d DCA 1964).
[5] Bowen says this latter situation is criminal contempt, receding from Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976), in this regard.
[6] Peculiarly, however, the trial court did not find, as is essential when this concept is the basis for criminal contempt, that the defendant's intentional divestment of assets left him without the ability to comply with the ordered act.
[7] See, e.g., Knowles v. Knowles, 522 So.2d 477 (Fla. 5th DCA 1988), rev. denied, 531 So.2d 1354 (Fla. 1988); Metz v. Metz, 546 So.2d 41 (Fla. 4th DCA 1989); Pabian v. Pabian, 480 So.2d 237 (Fla. 4th DCA 1985).
[8] See Bowen v. Bowen, 471 So.2d 1274 (Fla. 1985).
[9] While the general practice upon the pronouncement of a sentence of confinement in a State court is for the bailiff to forthwith drag the defendant from the courtroom to the jail cell, the practice in the federal criminal courts seems to be more genteel with the federal judge often giving the defendant time after a sentence of confinement "to put his affairs in order" and directing him to turn himself in at a designated confinement facility at some appointed future time. Certainly the law allows a state equity judge discretion to be graceful in this particular.