573 So.2d 357 (1990)
Edward Arnold BROYLES, Appellant,
v.
Leslie Virginia BROYLES, Appellee.
No. 90-368.
District Court of Appeal of Florida, Fifth District.
December 13, 1990.
Rehearing Denied January 28, 1991.
*358 Edward Arnold Broyles, Woodbridge, Va., pro se.
No Appearance, for appellee.
DAUKSCH, Judge.
This is an appeal from an order finding appellant/ex-husband in willful contempt of court for his failure to comply with an order incorporating a property settlement agreement. We reverse. Appellant also appeals the dismissal with prejudice of his request for declaratory relief, which we affirm.
On August 25, 1982, the parties executed a "Separation and Property Settlement Agreement." The settlement agreement was "approved, ratified, and confirmed in every respect and ... incorporated in and made a part of" the Final Judgment dissolving the parties' marriage and the parties were "ordered and required to fully comply with and perform the several acts required thereunder."
Paragraph 6 of the agreement provided in part that:
6... . the Husband agrees to reimburse and indemnify the Wife for any and all payments made subsequent to the execution of this agreement for the Sun Bank lien encumbering said 1977 Plymouth Arrow.
Paragraph 7 of the agreement set forth bills and accounts for which the appellee assumed responsibility, including a Sun Bank automobile loan with a balance of approximately $907 for a total of $6,960.
Paragraph 9 provided that appellant agreed to pay $15,000 "as alimony" to appellee as follows:
(a) Husband agrees to pay to the Wife 20% of any annual earnings over $25,000.00 taxable income per year, beginning for the taxable year 1982. The Husband agrees to provide to the Wife a copy of his annual income tax returns filed with the Internal Revenue Service, including the 1982 return.
(b) In the event that the entire balance of $15,000.00 in alimony has not been fully paid to the Wife on or before June 30, 1989, the Husband agrees to entry of a judgment in favor of the Wife for a sum equal to the difference between $15,000.00 and the amount of alimony paid up to said date.
(c) The entire balance of $15,000.00 or any part thereof, may be prepaid to the Wife by the Husband at any time after the execution of this agreement.
(d) Any and all alimony payments, or any remaining balance to be paid in the form of alimony from the Husband to the Wife shall terminate upon remarriage by the Wife.
Paragraph 10 of the agreement provided for payment of $500 to Edmund T. Woolfolk, then appellee's attorney of record "to be applied to attorney's fees of the Wife."
On September 20, 1989, appellee filed a Motion for Contempt and a Notice of Hearing on the motion. The notice stated that appellee would seek a contempt order for appellant's failure "to pay the ordered alimony that was due on or before June 30, 1989, attorney fees and reimbursement of a bank loan." In her motion, appellee alleged an arrearage of $14,388 in alimony, an arrearage of $1,563 for the Sun Bank lien, and failure to pay $500 in attorney fees.
On October 10, 1989, appellant filed a response to appellee's motion. He admitted that $14,188 remained unpaid as of June 30, 1989, but stated that Paragraph 9 of the agreement provides specifically that a money judgment was the appropriate remedy. Appellant also admitted that payments had not been made for the Sun Bank lien, but argued that contempt was not available because the amount was a money debt. Appellant denied that payments had not been made for attorney fees.
*359 On November 8, 1989, appellant filed a Request for Declaratory and Other Relief pursuant to Florida Rule of Civil Procedure 1.510 and Florida Statute 86.011. Appellant alleged:
10. The consideration underlying the promise of Respondent to pay the sum specified in Paragraph 9 and other sums of the agreement attached hereto was an adjustment of the parties' "respective property rights ... and financial obligations" and a general waiver by Petitioner of any interest in Respondent's property.
11. In 1983, Florida courts ruled that a law degree does not constitute "property" for the purpose of property distribution in a dissolution of marriage, even if earned during the course of the marriage, and that future earnings were likewise not subject to division or distribution as lump sum alimony or the like. The Fifth District Court of Appeal stated that no court could decree the same because it would amount to involuntary servitude by the degree holder spouse for the benefit of the non-degree holder.
Appellant stated he was unsure in view of the subsequent Florida court rulings as to whether the consideration given by appellee in return for appellant's promise to pay under Paragraph 9 of the settlement agreement failed because it was based "in large part" on what he alleged to be an unconstitutional claim or premise that appellee possessed a property interest in appellant's degree or earnings therefrom, or a right to an award of lump sum or other alimony as a result of the alleged support of appellee during law school.
On December 6, 1989, the trial court held a hearing on both the contempt motion and the appellee's motion to dismiss appellant's request for declaratory relief.
Appellee testified that her understanding was she was to get $15,000 in alimony and attorney fees under the agreement and that appellant was to pay a lien against a car owned by the parties. Appellee testified that she had paid the attorney fees of $500 and that she had paid the lien off. Appellee also testified that appellant had remitted the sum of $1,212 toward the alimony amount. Appellee acknowledged that the alimony amount was to be paid in installments and that amounts unpaid as of June 30, 1989 were to be the subject of a judgment. Paragraph 9-B, appellee testified, "was put in there that we could go back to court for judgment on any moneys that he still owed me since he was making installment payments over the last seven years." Appellee testified that appellant had not paid her anything on the $500 in attorney fees under the agreement. Appellee also testified that to the best of her knowledge, appellant was still employed as a government attorney, and not hospitalized or disabled.
On January 12, 1990, the trial court entered an order dismissing appellant's request for declaratory relief, calling appellant's motion "unfounded."
On January 17, 1990, an order on motion for contempt was filed adjudging the appellant to be in contempt of court and ordering appellant to pay over $21,000 to the appellee. The contempt order found, based on appellant's admissions, that his taxable income for years 1982-1988 was $196,401; that the alimony owed for those years was $10,220; and that the appellee had paid $1,212 of that sum to appellee. The court found, based on appellant's admissions of income, that appellant "had the ability to pay the court ordered lump sum alimony payments but failed or refused to do so" and found that the amount unpaid was $13,788, plus interest of $2,507.47. The trial court further found that the appellant had not paid any attorney fees and that he "had the ability to pay these attorney fees but failed or refused to do so." The trial court ordered the appellant to pay the sums ($16,795.47) by February 15, 1990 or to report to the Orange County Jail on February 19, 1990. The trial court also ordered the appellant to pay $3,131.70 for attorney's fees to the appellee by March 19, 1990 or to report to the same jail. Finally, the trial court ordered appellant to pay a lien reimbursement to the appellee of $1,563 and specified that if the appellant failed to pay the sums or to report to the *360 county jail, a writ of attachment would issue.
Appellant argues the contempt order in the instant case is fundamentally defective in several particulars and we agree.
In Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla. 1985), the Supreme Court of Florida stated that the
purpose of a civil contempt proceeding is to obtain compliance on the part of a person subject to an order of the court. Because incarceration is utilized solely to obtain compliance, it must be used only when the contemnor has the ability to comply. This ability to comply is the contemnor's "key to his cell." ... We continue to adhere to the view that incarceration for civil contempt cannot be imposed absent a finding by the trial court that the contemnor has the present ability to purge himself of contempt. Without the present ability to pay from some available asset, the contemnor holds no key to the jailhouse door.
The Bowen court emphasized that once the court finds that a civil contempt has occurred and if incarceration is deemed appropriate, "the court must make a separate, affirmative finding that the contemnor possesses the present ability to comply with the purge conditions set forth in the contempt order." 471 So.2d at 1279. Therefore, a finding of past ability to pay is insufficient.
The order on motion for contempt is defective because it lacks a separate, affirmative finding, as required by Bowen, that appellant has the present ability to pay the amounts specified in the order (i.e., $16,795.47 by February 15, 1990; $3,131.70 by March 19, 1990; and $1,563 by a date unspecified). The order contains only a finding he "had the ability to pay the court ordered lump sum alimony payments." This precise language (i.e. "had" ability to pay) has been held to be insufficient under the Bowen standard. Scapin v. Scapin, 553 So.2d 319 (Fla. 1st DCA 1989).
The order is also defective because it does not contain an express provision for purging any contempt after incarceration through payment of the ordered amounts. Civil contempt orders must always contain a provision permitting the contemnor to purge himself of his contempt by compliance with the court order he has disobeyed. See, e.g., Contella v. Contella, 557 So.2d 880 (Fla. 5th DCA 1990); Allman v. Johnson, 488 So.2d 884 (Fla. 5th DCA 1986); Coody v. Muszynski, 402 So.2d 81 (Fla. 5th DCA 1981).
Moreover, the agreement of the parties incorporated into the 1982 final judgment dissolving the parties' marriage is a property settlement, and, as such, the provisions thereof are not enforceable via use of the trial court's contempt powers, notwithstanding the fact that some payments in the agreement were classified as "alimony."
The characterization of a payment provision in a property settlement agreement as "alimony" is not controlling on the issue of whether true alimony was intended by the parties. Underwood v. Underwood, 64 So.2d 281 (Fla. 1953); Rubio v. Rubio, 347 So.2d 1093 (Fla. 2d DCA 1977); White v. White, 338 So.2d 883 (Fla. 3d DCA 1976), cert. den., 352 So.2d 176 (Fla. 1977). Permanent periodic alimony is terminated upon the death of either spouse or the remarriage of the receiving spouse. Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla. 1980). The instant "alimony," assuming it had been paid out from 1982 to 1989, would have terminated upon the remarriage of appellee, but not upon the death of appellant. Also, appellant was entitled to prepay the entire $15,000 at any time. Since appellee was self-supporting, the alimony award similarly fails to meet one of the primary elements to be considered in awarding permanent periodic alimony, the need of the recipient spouse for the funds. Canakaris, 382 So.2d at 1201. Awards of lump sum alimony usually are not dependent upon the recipient's needs, but, rather, are designed to effect distribution of marital assets acquired during the marriage. Canakaris; Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981). A lump sum alimony award is a vested right which is neither terminable upon a spouse's remarriage *361 or death nor subject to modification. Canakaris, 382 So.2d at 1201; Granville v. Granville, 445 So.2d 362 (Fla. 1st DCA 1984). But, in the instant case, the "alimony," including "any and all" arrearages, terminates upon appellee's remarriage. Finally, the "alimony" in the instant case cannot be deemed rehabilitative alimony. While appellee at the time of the dissolution was self-supporting, she claimed she needed a minimum of $15,000 to further her education. However, the "alimony" awarded in the instant agreement is "not tied to any specific rehabilitative purpose." Kirchman v. Kirchman, 389 So.2d 327, 330 (Fla. 5th DCA 1980). Thus, since the language of paragraph 9 of the agreement is inconsistent with the idea that the financial arrangements between the parties are in fact support alimony, the amounts in issue were elements of a property settlement not enforceable by contempt.
Appellant next charges the contempt order's award of attorney fees and costs in the amount of $3,131.70 should be reversed. We agree.
Appellant correctly notes that appellee did not request an award of attorney fees or costs in any of her motions, notices or other papers. Prior notice of the application for an award of attorney fees is required before entry of any award, and a specific application for award of such fees must be made by the party desiring the same. Kratzer v. Reimiller, 552 So.2d 1188 (Fla. 5th DCA 1989).
Appellee also did not request an award of attorney's fees at or during the December 6, 1989 hearing. However, during the hearing, the trial court stated:
I think your client would be entitled to a reasonable fee for having to hire you and come back to court because he didn't comply with the agreement dealing with the alimony, and he certainly hasn't complied with the attorney's fees either, which is part of the alimony. So she would be entitled to a reasonable fee.
Appellee's counsel stated that his normal hourly fee was $125 per hour and that he had spent approximately eleven hours on the matters involved up to that time. The trial court indicated that such a fee was reasonable and that awards of up to $185 per hour had been requested by other parties. The trial court suggested appellee's counsel submit an affidavit in support of attorney's fees and costs.
This affidavit was not served upon appellant prior to entry of the January 16, 1990 orders, nor was he afforded any opportunity to review or examine the amounts. Even where a statute permits a court to award attorney fees sua sponte, the court must nonetheless give notice to the party against whom award will be made, and afford an opportunity to review and rebut the reasonableness of any amount claimed. Demaso v. Demaso, 345 So.2d 391 (Fla. 3d DCA 1977). An opportunity to adduce testimony and rebut must be afforded before entry. Gables Ins. Agency, Inc. v. Peninsula Federal Sav. & Loan Ass'n, 442 So.2d 1013 (Fla. 3d DCA 1983); Morgan v. S. Atl. Production Credit Ass'n., 528 So.2d 491 (Fla. 1st DCA 1988).
We affirm the trial court's dismissal with prejudice of appellant's request for declaratory relief. Appellant filed his request for declaratory relief on November 8, 1989, arguing that Severs v. Severs, 426 So.2d 992 (Fla. 5th DCA 1983), a decision this court handed down on January 5, 1983, relieved him of the obligation to pay appellee the amounts due in paragraph 9 of the parties' 1982 settlement agreement. In Severs, this court rejected a claim for lump sum alimony and held that a spouse's claim to a vested interest in the husband's educational and professional productivity, past and future, was unsupportable. However, nothing in the Severs opinion does or could retroactively affect prior awards, assuming, arguendo, that opinion applied in the instant case. Moreover, appellant's request was filed nearly seven years after the Severs decision and over four months after appellee, by the terms of the agreement, was entitled either to entry of a judgment in her favor or payment in the amount of up to $15,000. Appellant made partial payments to appellee in 1984 and 1985. On October 10, 1989, appellant admitted *362 he owed appellee $14,188 under Paragraph 9. Appellant through the property settlement procured the court to enter the precise judgment of which he now complains. It is well settled that Florida courts have applied the doctrine of estoppel as a result of silence when common honesty and fair dealing demanded that a person estopped should have spoken. Hensel v. Aurilio, 417 So.2d 1035 (Fla. 4th DCA 1982). See also Lyon v. Lyon, 174 Ind. App. 597, 369 N.E.2d 649 (App. 1977); Currier v. Currier, 505 S.W.2d 724 (Tenn. 1974).
In conclusion, we vacate the contempt order because a property settlement is not enforceable via contempt. Moreover, this order does not conform to Bowen. Also, we hold the award of attorney fees improper because appellee sought enforcement of a property settlement agreement, that agreement does not provide for fees or costs in such a situation, and no notice of amounts to be awarded was given to appellant prior to entry of the award.
The order dismissing appellant's declaratory relief action is affirmed.
AFFIRMED in part; REVERSED in part.
COWART and HARRIS, JJ., concur.