471 So.2d 1274 (1985)
Eugenia BOWEN and the Florida Department of Health and Rehabilitative Services, Petitioners,
v.
Frankie L. BOWEN, Respondent.
No. 64906.
Supreme Court of Florida.
June 20, 1985.
*1275 Joseph R. Boyd and Susan S. Thompson of Boyd, Thompson & Williams and Chriss Walker, Dept. of Health and Rehabilitative Services, Tallahassee, for petitioners.
Robert T. Connolly and Michael A. Campbell, Florida Rural Legal Services, Inc., Bartow, for respondent.
Miriam E. Mason, Tampa, and N. David Korones, Clearwater, amicus curiae for the Executive Council to the Family Law Section of the Florida Bar.
OVERTON, Justice.
This is a petition to review Bowen v. Bowen, 454 So.2d 565 (Fla. 2d DCA 1984), in which the Second District Court of Appeal held that a civil contempt proceeding was transformed into a criminal contempt proceeding where the trial judge, without regard to the contemnor's ability to purge himself of contempt, imposed imprisonment for failure to pay child support on the ground that the contemnor wrongfully used his resources for purposes other than making the court-ordered support payments. The district court reversed the trial court's judgment, concluding that due process required the appointment of counsel and other due process protections in such a proceeding. We find conflict with Waskin v. Waskin, 452 So.2d 999 (Fla. 3d DCA 1984).[1] For the reasons expressed, we agree with the district court that the record under review fails to establish that the respondent had the present ability to pay the arrearage and that, under the facts of this case, the respondent was improperly incarcerated for civil contempt. We recognize the need to explain our decisions in Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976); Garo v. Garo, 347 So.2d 418 (Fla. 1977); Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977); Lamm v. Chapman, 413 So.2d 749 (Fla. 1982); and Andrews v. Walton, *1276 428 So.2d 663 (Fla. 1983), and harmonize them with multiple district court decisions on this issue. In this opinion, we will attempt to clarify the law with respect to the use of civil and criminal contempt in family support matters.
In the instant case, the petitioner Florida Department of Health and Rehabilitative Services (HRS) filed an action against the respondent, Frankie L. Bowen, to establish the amount of child support to be paid by the respondent to HRS in reimbursement for public assistance payments made to the respondent's estranged wife, Eugenia Bowen, also a petitioner in this cause. HRS obtained a default against the respondent. The circuit court judge entered an order of support in July, 1982, directing the respondent to pay $163 monthly to HRS. When respondent failed to make the payments and to respond to an order to appear and show cause why he should not be held in contempt,[2] a warrant was issued for his arrest. In December, 1982, the trial court held the respondent in contempt, found him financially able to make the support payments, and modified the prior order by directing him to make weekly payments of $50 to HRS. The respondent again failed to make the payments and the court issued a second order for him to appear and show cause. This order warned that respondent was subject to imprisonment and/or fines if adjudged in contempt, and admonished him to bring "all proof you may have such as pay-stubs, income tax returns, doctor's statements, receipts, etc., to show why you have not made these payments."
Pursuant to the second order, the respondent presented evidence that he had been laid off from his $140 per week job as a painter in May, 1982, due to a general cutback in the employer's work force; that despite a diligent search for employment, he remained unemployed until January 1, 1983, except for occasional yard work, for which he never earned more than $25 per week; and that on January 21, 1983, he received a paycheck and tendered $200 to HRS, which an HRS employee refused to accept until after the scheduled February 11, 1983, hearing. The record reflects that at the February 11 hearing, the trial judge informed respondent that he was free to present any evidence or witness on his own behalf, that respondent was not represented by counsel, and that respondent asked questions of an HRS representative, who testified that HRS employees are instructed to accept any payment tendered. Respondent was unable to name or describe the person whom he claimed had refused to accept the tendered payment. The trial judge informed respondent that he was $916 in arrears in child support payments and asked how much he could pay at that point. Respondent stated that he could pay $200.
In adjudicating respondent in contempt for failure to make the support payments, the trial judge found that respondent previously had the ability to comply with the support order, but had divested himself of that ability through his own fault or neglect designed to frustrate the intent or purpose of the order. The respondent was sentenced to five months and 29 days in jail with the provision that he could purge himself of contempt by paying the $916 arrearage plus $50 court costs. The trial court also found the respondent indigent for the purpose of an appeal to the district court of appeal.
In reversing the respondent's conviction and sentence, the district court noted that, although the record lacked "total clarity concerning [respondent's] inability to pay," the case came to it "on a finding that [respondent] was unable to pay and that his inability was his own fault." 454 So.2d at 567. It concluded that, because the trial court's order imposed incarceration on a finding that respondent wrongfully divested himself of the ability to pay, without a finding that respondent had the present *1277 ability to pay the purge amount, the contempt proceeding was criminal rather than civil in nature. Since the proceeding was criminal, the district court held that the judgment imposing incarceration could not be affirmed because respondent was not afforded the right to court-appointed counsel at the contempt hearing.
HRS seeks a reversal of that holding, contending that this Court's holding in Faircloth permits a judge to incarcerate a defaulting parent in a civil contempt proceeding upon a finding that the parent has divested himself of the ability to comply with the court's support order through his own fault or neglect designed to frustrate the order. HRS asserts that, under such circumstances, there is no need to show that the defaulting party has a present ability to purge himself of contempt and there is no right to counsel.
The respondent counters by asserting that a jail sentence unaccompanied by a purge condition that is within the power of the contemnor to accomplish is in fact a sentence for criminal contempt, requiring the application of full due process protections. He argues that Faircloth focused solely on the adjudicatory phase of the contempt hearing and did not address the requirements for a civil incarceration order after an adjudication of contempt. He asserts that our subsequent decisions in Pugliese and Andrews set forth the requirement that a civil contemnor must possess the present ability to purge himself of contempt before incarceration can be imposed.
As this Court has previously stated, the purpose of a civil contempt proceeding is to obtain compliance on the part of a person subject to an order of the court. Because incarceration is utilized solely to obtain compliance, it must be used only when the contemnor has the ability to comply. This ability to comply is the contemnor's "key to his cell." Pugliese. The purpose of criminal contempt, on the other hand, is to punish. Criminal contempt proceedings are utilized to vindicate the authority of the court or to punish for an intentional violation of an order of the court. Andrews; Pugliese; Demetree v. State ex rel. Marsh, 89 So.2d 498 (Fla. 1956); In re S.L.T., 180 So.2d 374 (Fla. 2d DCA 1965). Because this type of proceeding is punitive in nature, potential criminal contemnors are entitled to the same constitutional due process protections afforded criminal defendants in more typical criminal proceedings. See Aaron v. State, 284 So.2d 673 (Fla. 1973); see also Fla.R.Crim.P. 3.830, 3.840. We continue to adhere to the view that incarceration for civil contempt cannot be imposed absent a finding by the trial court that the contemnor has the present ability to purge himself of contempt. Without the present ability to pay from some available asset, the contemnor holds no key to the jailhouse door.
Confusion concerning the requirement that a civil contemnor have the ability to purge has resulted from two separate statements in our Faircloth decision. In the first, we stated:
We hold a trial judge must make an affirmative finding that either (1) the petitioner presently has the ability to comply with the order and willfully refuses to do so, or (2) that the petitioner previously had the ability to comply, but divested himself of that ability through his fault or neglect designed to frustrate the intent and purpose of the order.
339 So.2d at 651. In the second, we expressly approved the following excerpt from Judge Robert Smith's dissenting opinion in Faircloth v. Faircloth, 321 So.2d 87, 94 (Fla. 1st DCA 1975):
Upon the affected party's failure to discharge his burden of proving that he is disabled to pay by reason of intervening factors not due to his own neglect or fault, the chancellor may find as a fact .. . that any disability was self-induced. And on that finding the chancellor may order the defaulting party to pay or be imprisoned for his contemptuous refusal to do so.
339 So.2d at 652. To the extent these statements indicate that incarceration can be imposed upon a civil contemnor who lacks the ability to pay the purge amount, *1278 we recede from this language. Although we did not directly address in that opinion the purge requirement of a civil contempt proceeding, it is important to note that the Faircloth result establishes that a present ability to purge is a prerequisite to incarceration for civil contempt. In affirming the trial court's incarceration of Faircloth, the district court of appeal found the record reflected that Faircloth's inability to comply with the court order was caused by his own "neglect or misconduct," and noted that the record did not establish that Faircloth had the ability to pay the $4,300 arrearage that had been fixed by the trial court as the purge amount. In the face of this holding, this Court quashed the district court's decision and directed that the case be remanded so that the trial court could make an "affirmative finding of ability if supported by the record or otherwise vacate the order of contempt." Id. at 653. The disposition in that case indicates clearly that incarceration cannot be imposed upon a civil contemnor for willfully failing to comply with a court order unless the court first determines that the contemnor has the present ability to purge himself of contempt.
Consistent with the Faircloth decision, in Garo we held that an order finding a husband in contempt for willful nonpayment of alimony was fatally defective in that it lacked specific findings regarding his ability to pay the amount due. In Pugliese we distinguished between the purposes of civil and criminal contempt, observing that notice must be given to a person who will be charged with criminal contempt. In holding in Lamm that HRS may utilize all remedies available to the custodial parent, including civil contempt proceedings, to enforce a parent's obligation to provide child support, we found that the record in that case was insufficient to establish the father's ability to pay the support. In Andrews we concluded that the evidence clearly supported the trial court's determination that the father had the ability to pay the ordered child support and held that
there are no circumstances in which a parent is entitled to court-appointed counsel in a civil contempt proceeding for failure to pay child support because if the parent has the ability to pay, there is no indigency, and if the parent is indigent, there is no threat of imprisonment.
428 So.2d at 666. We find the decisions of the First District in Griffin v. Griffin, 461 So.2d 251 (Fla. 1st DCA 1984); Smith v. Miller, 451 So.2d 945 (Fla. 1st DCA 1984); and Ponder v. Ponder, 438 So.2d 541 (Fla. 1st DCA 1983), and the Third District in Robbins v. Robbins, 429 So.2d 424 (Fla. 3d DCA 1983), to be fully consistent with these holdings. The decision of the Third District in Waskin, however, conflicts with the instant case. The petitioner in Waskin instituted a contempt proceeding against the respondent, her former husband, alleging he willfully disobeyed a court order for payment of alimony and support. The district court, in affirming the finding of contempt by the trial court, held that the trial court could properly imprison the respondent for civil contempt upon a finding that the respondent willfully violated the court order, without affirmatively finding that the respondent possessed the present ability to pay the purge amount. This holding is contrary to the law established by this Court as outlined above.
To avoid confusion, we believe it appropriate to address the correct procedure for establishing civil contempt in family support matters. In these cases, the initial order or judgment directing a party to pay support or alimony is predicated on an affirmative finding that the party has the ability to pay. This initial judicial determination creates, in subsequent proceedings, a presumption that there is an ability to pay. In a civil contempt proceeding for failure to pay child support or alimony, the movant must show that a prior court order directed the party to pay the support or alimony, and that the party in default has failed to make the ordered payments. The burden of producing evidence then shifts to the defaulting party, who must dispel the presumption of ability to pay by demonstrating that, due to circumstances beyond his control which intervened since the time *1279 the order directing him to pay was entered, he no longer has the ability to meet his support obligations. The court must then evaluate the evidence to determine whether it is sufficient to justify a finding that the defaulting party has willfully violated the court order. Once the court finds that a civil contempt has occurred, it must determine what alternatives are appropriate to obtain compliance with the court order. If incarceration is deemed appropriate, the court must make a separate, affirmative finding that the contemnor possesses the present ability to comply with the purge conditions set forth in the contempt order. In determining whether the contemnor possesses the ability to pay the purge amount, the trial court is not limited to the amount of cash immediately available to the contemnor; rather, the court may look to all assets from which the amount might be obtained.
Although incarceration cannot be used as a means to seek compliance with the court order when the contemnor does not have the ability to purge himself of contempt, the court does have available other means to obtain compliance. If, for example, the defaulting party has willfully neglected his support obligations but no longer has a present ability to pay because he is unemployed, the court may direct him to seek employment through Florida State Employment Services and to report weekly until employment is secured, in addition to requesting the employment service to periodically report to the court on the status of his job search. If the party is employed but presently lacks funds or assets, the court may issue a writ directing his employer to garnish the party's salary in order to satisfy the alimony or child support obligations in accordance with section 61.12, Florida Statutes (Supp. 1984), or may enter an income deduction order for payment of child support or alimony, pursuant to section 61.081 or 61.1301, Florida Statutes (Supp. 1984). These alternatives to incarceration are examples and are not intended to limit the trial judge's discretion in obtaining compliance with a court order.
When the court believes that the defaulting party's conduct is such that it warrants punishment, a criminal contempt proceeding should be instituted. Criminal contempt proceedings are appropriate when it can be established that the party in default has continually and willfully neglected his support obligations, or has affirmatively acted to divest himself of assets and property. An indirect criminal contempt proceeding must fully comply with rule 3.840, Florida Rules of Criminal Procedure, and defendants are entitled to the appropriate due process protections, which may include court-appointed counsel. In such a proceeding, the movant must prove, beyond a reasonable doubt, that the defendant willfully violated the court order. The movant, however, has the benefit of the presumption that the defendant has had the ability to pay the ordered support or alimony by reason of the prior judicial determination. This presumption, of course, places the burden on the defendant to come forward with evidence to show that, due to circumstances beyond his control, he had no ability to pay. We reject the argument that this presumption improperly infringes upon a criminal contempt defendant's fifth amendment privilege. See State v. Buchman, 361 So.2d 692 (Fla. 1978). This type of required response has been approved in other criminal matters. See § 812.022(2), Fla. Stat. (1983) (statutory inference that a person proved to be in possession of recently stolen property knew or should have known that the property was stolen); Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) (upholding an inference essentially identical to § 812.022(2)).
In the instant case, the record clearly supports the conclusion that the respondent did not have the present ability to pay the $966 purge amount. The finding of the trial judge that the respondent was indigent for purposes of the appeal affirmatively establishes that the respondent was indigent and had no present ability to pay the purge amount.
*1280 In summary, we hold: (a) In both civil and criminal contempt proceedings, a prior judgment establishing the amount of support or alimony to be paid creates a presumption that the defaulting party has the ability to pay that amount. (b) In civil contempt proceedings, the defaulting party has the burden to come forward with evidence to dispel the presumption that he had the ability to pay and has willfully disobeyed the court order. In the event contempt is found, the trial judge must separately find that the contemnor has the present ability to pay the purge amount before incarceration can be imposed to obtain compliance with the court order. (c) In criminal contempt proceedings, the movant has the burden of establishing, beyond a reasonable doubt, that the defaulting party willfully violated the court order. In meeting this burden, the movant has the benefit of the presumption that the defaulting party had the ability to comply with the court order.
For the reasons expressed, we approve the decision of the district court of appeal with directions to remand this cause to the trial court for further proceedings consistent with this opinion.
It is so ordered.
ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, Acting C.J., dissents.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
[2] We note that under rule 1.100(b), Florida Rules of Civil Procedure, civil contempt proceedings should be instituted by motion and notice of hearing. See form 1.982, Florida Rules of Civil Procedure. In matters involving criminal contempt, however, an order to show cause is mandatory.