708 So.2d 296 (1998)
Richard Steven ATLAS, Appellant,
v.
Susan Carol ATLAS, Appellee.
Nos. 96-0924, 96-2107.
District Court of Appeal of Florida, Fourth District.
February 18, 1998.
Rehearing and Rehearing Denied April 16, 1998.
*297 Richard Steven Atlas, North Lauderdale, pro se.
No brief filed for appellee.
Rehearing and Rehearing En Banc Denied April 16, 1998.
PARIENTE, BARBARA J., Associate Judge.
These are the latest in a series of multiple appeals from post-judgment proceedings arising from appellant's, Richard Steven Atlas (Atlas), failure to pay child support. We affirm on all points raised in these consolidated appeals.
The history of this case dates back to dissolution proceedings in 1990, when the parties entered into a settlement agreement. As part of this agreement, Atlas agreed to pay $750 per month in child support for the parties' two minor children. Since that time, there has been continuous litigation resulting from Atlas' repeated failure to live up to his agreed-upon child support obligation, including numerous contempt proceedings. Atlas has consistently maintained that he is unable to pay the amount he agreed to; however, the trial judges and hearing officers who considered Atlas' case found otherwise.[1]
Appellee Susan Atlas' efforts to enforce the child support obligation have not been restricted to contempt proceedings. In September 1990, the court enjoined Atlas from depleting assets in his name or the name of his business in the amount of $53,000. Subsequently, by agreed order in December 1990, the court enjoined Atlas from depleting funds in his IRA accounts.
There has also been other related litigation. For example, in an action to avoid a fraudulent transfer, the trial court found collusion between Altas and his parents. This action resulted in a final judgment avoiding fraudulent transfer and an order establishing *298 a constructive trust, which were both affirmed on appeal.
In one of the consolidated appeals presently before us, Atlas contends that the trial court erred in dismissing his petition for modification based on the lack of record activity. Family Law Rule of Procedure 12.420, which governs dismissal of actions for failure to prosecute in family law cases, provides that "dismissal of actions shall be governed by Florida Rule of Civil Procedure 1.420," with two exceptions not applicable here. Rule 1.420(e) provides in pertinent part:
All actions in which it appears on the face of the record that no activity by filing of pleadings, order of court, or otherwise has occurred for a period of 1 year shall be dismissed by the court on its own motion or on the motion of any interested person... unless ... a party shows good cause in writing at least 5 days before the hearing on the motion why the action should remain pending.
Record activity for purposes of this rule has been defined by our supreme court as an affirmative act, by either party, calculated to hasten a suit to judgment and advance a case toward resolution. See Toney v. Freeman, 600 So.2d 1099, 1100 (Fla.1992); Eastern Elevator, Inc. v. Page, 263 So.2d 218, 220 (Fla.1972). In this case, the record is devoid of any evidence that Atlas attempted to bring his petition for modification to hearing. Further, Atlas did not file an affidavit of good cause in response to the motion to dismiss.
Dismissal of the petition for lack of prosecution was proper unless, as Atlas contends, the trial court lacked jurisdiction over the petition for modification during the time period when Atlas' appeals of the contempt orders were pending.[2] This jurisdictional determination requires an analysis of Florida Rule of Appellate Procedure 9.600(c)(1):
In family law matters: The lower tribunal shall retain jurisdiction to enter and enforce orders awarding separate maintenance, child support, alimony, attorneys' fees and costs for services rendered in the lower tribunal ... or other awards necessary to protect the welfare and rights of any party pending appeal.
In Merian v. Merhige, 690 So.2d 678 (Fla. 3d DCA 1997), the third district interpreted this rule as allowing the trial court to retain jurisdiction to hear a petition for downward modification of child support when an appeal was pending on the trial court's order assessing arrears through June 1, 1993. The third district reasoned that since the petition for modification covered a time period after June 1, 1993, "there was no overlap between the order being appealed and the motion for modification.... The granting of modification relief prospectively would have no effect on the order being appealed." Id. at 681.
To the extent that the petition for modification sought prospective downward modification, there would be no barrier to the trial court's jurisdiction as a result of the pending appeals from the contempt orders. Accordingly, we affirm the order dismissing Atlas' separate petition for modification.
As to Atlas' numerous legal arguments attacking the entry of the latest in a series of contempt orders,[3] we find each point to be without merit. In one point, Atlas attacks the sufficiency of the findings, relying on Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997), for reversal. We disagree.
As a result of Atlas' 1990 settlement agreement, Atlas was obligated to pay $750 per month in child support. This agreement, which has never been set aside, created a presumption that Atlas possessed the *299 ability to pay the monthly amounts. See id. at 1014 (quoting Bowen v. Bowen, 471 So.2d 1274, 1278-79 (Fla.1985)). Atlas' failure to rebut this presumption is sufficient for a finding that Atlas had the ability to meet the support obligations, and was thus in contempt of court for not doing so. See id.
As to Atlas' ability to pay the purge amount, which is the second step in the contempt equation, see id., here, unlike Pompey, the trial court had the benefit of several years of litigation arising from Atlas' continued non-payment of child support and a record that included evidence of substantial assets.
Lastly, unlike the petitioner in Pompey, Atlas was present at the contempt hearing and intentionally chose not to testify, instead invoking his Fifth Amendment privilege against self-incrimination. In Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Supreme Court held that a court may draw an adverse inference against a party in a civil action who invokes the Fifth Amendment privilege against self-incrimination. This court explained the reason for the rule:
Such a rule is both logical and utilitarian. A party may not trample upon the rights of others and then escape the consequences by invoking a constitutional privilegeat least not in a civil setting. Particular circumstances may give rise to the necessity for protecting such a party's interests, as, for example, granting a continuance because of pending criminal charges, see, e.g., Kerben v. Intercontinental Bank, 573 So.2d 976 (Fla. 5th DCA 1991), however, that does not and should not impinge upon the general rule.
Fraser v. Security & Inv. Corp., 615 So.2d 841, 842 (Fla. 4th DCA 1993).
In Waskin v. Waskin, 452 So.2d 999 (Fla. 3d DCA 1984), disapproved on other grounds, Bowen, 471 So.2d at 1278, a husband was confronted with a contempt proceeding for failing to meet his support obligations. The wife contended that the husband had willfully evaded the order to pay support, while the husband maintained that he could not pay support due to heavy expenses he incurred in defending himself against criminal charges of conspiring to murder his wife.
At the contempt proceeding, the wife called the husband as an adverse witness and asked if he had in fact conspired to have her killed, thereby seeking to avoid the obligation. The husband refused to answer, and invoked the Fifth Amendment. The wife then moved to have her husband's testimony stricken, which the trial court granted. The third district affirmed, finding that the husband had no right to have his testimony considered in support of his asserted defense and yet claim his Fifth Amendment privilege against self-incrimination.
Here, Atlas not only failed to present evidence of his inability to pay the purge amount, but also invoked the Fifth Amendment concerning his financial status and refused to testify as to the content of his financial affidavit. The trial court could have properly drawn an adverse inference from this invocation that would further support a finding that Atlas, who has continuously fought payment of his child support since 1990, had the ability to pay the purge amount ordered.
AFFIRMED.
DELL and WARNER, JJ., concur.
NOTES
[1] The majority of the contempt orders entered have been the subject of appeals that have either been affirmed or dismissed. A review of the records in the appeals reveals a pattern of Atlas' failure to meet his support obligations and then, at the "last minute" in order to avoid incarceration, satisfying the purge provisions of the contempt orders entered against him.
[2] Our records show that appellant filed a variety of appeals from contempt orders that were pending in this court from July 1994 until February 1996.
[3] Since the entry of the contempt order being appealed, activity has apparently continued in the trial court, including the entry of an order dated March 3, 1997 prohibiting Atlas from representing himself because of his abusive pattern of litigation, citing Martin v. Marko, 564 So.2d 518 (Fla. 4th DCA 1990). In that order, the trial court also noted that it had reduced the purge amount to $1,250 after conducting a Pompey hearing. See Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997). We are unable to determine whether this order was directed to a subsequent contempt order or to the order being appealed.