MIHOK, A. THOMAS, Associate Judge.
Robert Albright, the ex-husband of Linda Albright, appeals a trial court order holding him in contempt for failing to pay alimony and ordering that he be incarcerated until he pays the arrearage. We affirm.
Robert and Linda Albright married in 1993. She filed for divorce in 1998. A final judgment of dissolution, incorporating the terms of the parties’ settlement agreement, was entered on August 28,1998. The agreement required Albright to pay his former wife $1280 per month in alimony. The agreement also provided for the distribution of marital assets. Pertinent to this appeal, the agreement states:
The Trust Account, in the Husband’s name only, will vest in January 2001, at which time, the Husband shall transfer one-half of the balance of the account or not less than $250,000 to the Wife, or in the event that the Husband shall predecease the Wife, $250,000 shall be distributed to the Wife from the proceeds of the Husband’s estate.
There was a later version of the marital settlement agreement which, by its terms, was intended to replace the original agreement incorporated into the final judgment of dissolution. In this later version, the husband agreed to transfer $450,000 from his trust account to his ex-wife no later than December 15,1998.
Beginning in May 1999, the former wife filed a number of motions to hold Robert Albright in contempt. In June of 1999, the court found Albright in contempt for failing to make certain financial disclosures. In January of 2000, the court found that Albright owed $15,360 in unpaid alimony. The court at that time reserved ruling on the contempt issue because Albright was incarcerated. Apparently, he was in jail due to criminal charges of stalking and assaulting his former wife.
On April 14, 2000, the trial court entered a final order finding Albright to be in contempt of court. In his order, the trial judge found that, since a prior order directing Albright to pay support was entered, there was a presumption that Al-bright had the ability to pay. The court noted that Albright had stated in two marital settlement agreements that he had assets of at least $500,000. The court rejected as not credible Albright’s assertion that such assets never existed. As a result, the judge ordered Albright incarcerated, setting a purge amount of $15,365.25.
In July of 2000, the wife filed yet another motion for contempt, asserting that she was now owed $21,760 in unpaid alimony. At the hearing on this motion, Linda Al-bright testified that she had not received any alimony payments since the last contempt order. She also said that during the marriage, she had discovered, in Albright’s possession, a bank book with a balance of several hundred thousand dollars. Her husband told her that he was moving this money offshore to avoid complications with the IRS. According to Linda Albright, the bank book showed deposits of $660,000 and $104,000 and a total balance of approximately $865,000.
To support her testimony, the wife called Helen Tracy to testify that around July 4th of 1999, Tracy saw Robert Al-bright in a bar. During a conversation between them, Albright told Tracy that his ex-wife was never going to get his money because he had taken it to the islands.
The wife also called the paralegal who prepared the settlement agreements, Kimberly Temple, to testify that Mrs. Albright had initially given her the figures, but it was Mr. Albright who called and increased the lump sum amount due the wife from $250,000 to $450,000. Temple testified that the trust was identified to her as *1127 being offshore, although she could not recall if it was the husband or wife who made this representation.
When he testified, Robert Albright expressly denied that he had the ability to pay the purge amount. He testified that all he had was his social security of $1233 per month. And, according to him, there simply was no bank book and no offshore account. The essence of his defense was that the trust account was a “myth.” It was a “fabled fund.”
On October 16, 2000, the trial court entered a second order finding Albright in contempt of court. Albright was ordered incarcerated until he paid a purge amount of $24,425.25. This appeal followed. We affirm because we do not find that the trial court abused its discretion in finding Al-bright in contempt of court and in ordering his incarceration.
In Bowen v. Bowen, 471 So.2d 1274 (Fla. 1985), the supreme court set out a two-step procedure to be utilized by trial courts in handling family law civil contempt proceedings. We cited Bowen in our en banc decision in Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997), wherein we described that two-step procedure in the following manner:
It [the supreme court’s opinion in Bowen] first provided the procedure for determining if there has been a willful violation of a court order:
In these cases, the initial order of judgment directing a party to pay support or alimony is predicated on an affirmative finding that the party has the ability to pay. This initial judicial determination creates, in subsequent proceedings, a presumption that there is an ability to pay. In a civil contempt proceeding for failure to pay child support or alimony, the movant must show that a prior court order directed the party to pay the support or alimony, and that the party in default has failed to make the ordered payments. The burden of producing evidence then shifts to the defaulting party, who must dispel the presumption of ability to pay by demonstrating that, due to circumstances beyond his control which intervened since the time the order directing him to pay was entered, he no longer has the ability to meet his support obligations. The court must then evaluate the evidence to determine whether it is sufficient to justify a finding that the defaulting party has willfully violated the court order.
Bowen, 471 So.2d at 1278-79.
Then, as a second step which is a prerequisite to incarceration, the court went on to state:
Once the court finds that a civil contempt has occurred, it must determine what alternatives are appropriate to obtain compliance with the court order. If incarceration is deemed appropriate, the court must make a separate, affirmative finding that the contemnor possesses the present ability to comply with the purge conditions set forth in the contempt order. In determining whether the contemnor possesses the ability to pay the purge amount, the trial court is not limited to the amount of cash immediately available to the contemnor; rather, the court may look to all assets from which the amount might be obtained.
Id. at 1279 (emphasis added).
Pompey, 685 So.2d at 1014.
On appeal, Albright argues that he met his burden of establishing that he no longer has the ability to pay the alimony and that incarceration was not appropriate because the evidence does not support a finding that he has the present ability to pay the purge amount of more than $24,000. We disagree. There was suffi *1128 cient evidence presented by the wife at the contempt hearing to support the trial court’s order.
Albright’s obligation to pay alimony arose from the marital settlement agreement reached with his former wife. This agreement, which was incorporated into the final judgment of dissolution, raises the presumption of ability to pay. See Atlas v. Atlas, 708 So.2d 296, 298-99 (Fla. 4th DCA 1998). This presumption shifted the burden to Albright to establish that he no longer had the ability to pay.[1]
In trying to meet his burden, Al-bright testified that, following his incarceration and retirement, his only income was his monthly social security benefit of $1233. Clearly, such a limited income would not permit Albright to pay $1,280 per month in alimony if the trial judge had found such testimony to be credible. It is clear from the trial court’s order, however, that it was not Albright’s employment income or social security benefits which he believed gave rise to Albright’s ability to pay. In his order of contempt, the trial judge specifically pointed to the trust referenced in both the version of the couple’s marital settlement agreement that was actually incorporated into the final judgment of dissolution and a later, similar version. In the first version, the husband agreed to transfer to the wife half the balance of the account or not less than $250,000. In this version, the transfer was not to take place until January 2001 (some months after these contempt proceedings) when the account became “vested.” In the later ver-sión of the agreement, which states that it “shall replace the agreement dated July 28, 1998 incorporated into the final judgment of Dissolution of Marriage” and which was signed by the parties and notarized, the husband agreed to transfer $450,000 to the wife from his trust account not later than December 15, 1998. In addition to these agreements, the trial judge had the testimony of the wife and her witnesses regarding the bank book and statements attributed to the husband that he was moving his money “offshore” and that his wife was not going to get any of his money because he was moving it to the islands.
To rebut this testimony and the presumption that he had the ability to pay, Albright simply testified that he did not have any money hidden offshore and that the trust account never existed. The trial court specifically rejected this testimony as not credible.
Since it is for the trial court to determine the credibility of witnesses, we find sufficient evidence to support the trial court’s finding that Albright has willfully refused to pay the alimony and, therefore, is in contempt of court.
The next issue is the propriety of the trial court’s incarceration of Albright due to his failure to pay the alimony. Under Bowen, incarceration for failure to pay alimony is permitted “only if the trial court ‘makes a separate, affirmative finding’ that the contemnor possesses the present ability to comply with the purge amount.” *1129 Pompey, 685 So.2d at 1015 (quoting Bowen, 471 So.2d at 1279). In the instant case, the trial court made the affirmative finding required by Bowen. The trial judge had evidence of the marital settlement agreements referencing a trust account with assets of at least $250,000, the former wife’s testimony that her husband had previously boasted that he was going to move his money offshore to avoid the IRS, and Tracy’s testimony that Albright had boasted to her that his éx-wife would never get his money because he had moved it to the islands. Under these circumstances, the trial court did not abuse its discretion in finding that Albright had the present ability to pay $24,000 and rejecting as not credible his testimony that the trust had simply been a fabled fund — a figment of his imagination — a myth.
AFFIRMED.
SHAHOOD and HAZOURI, JJ., concur.

. Section 61.14(5)(a), Florida Statutes (2000), provides in pertinent part:
When a court of competent jurisdiction enters an order for the payment of alimony or child support or both, the court shall make a finding of the obligor’s imputed or actual present ability to comply with the order. If the obligor subsequently fails to pay alimony or support and a contempt hearing is held, the original order of the court creates a presumption that the obligor has the present ability to pay the alimony or support and to purge himself or herself from the contempt. At the contempt hearing, the obligor shall have the burden of proof to show that he or she lacks the ability to purge himself or herself from the contempt.
The 1997 version, in effect at the time of entry of the final judgment of dissolution, contains identical language.