831 So.2d 763 (2002)
Jacob A. ROSE, Appellant,
v.
Inge B. FORD, Appellee.
No. 4D02-954.
District Court of Appeal of Florida, Fourth District.
November 27, 2002.
*764 Jacob A. Rose of The Rose Law Firm, P.A., West Palm Beach, for appellant.
Philip M. Chopin of Chopin & Chopin, West Palm Beach, for appellee.
SHAHOOD, J.
This is a pro se appeal by attorney, Jacob A. Rose, from an Order of Contempt and Amended Order of Contempt ordering appellant's incarceration without a hearing to determine his ability to pay the purge at the time of confinement. We reverse and remand for findings by the court as to appellant's ability to pay prior to incarceration. We affirm all other issues raised by appellant without comment.
Appellant, pursuant to several court orders, was ordered to pay various sums for child support, arrearages toward child support, temporary attorney's fees, and costs.[1] Appellee, Inge B. Ford, filed two motions *765 for contempt when appellant failed to comply with the court's orders. A hearing was held on appellee's motions at which time appellant submitted various exhibits in support of his claim that he did not have the funds in which to pay the amount owed.
The court nevertheless held that appellant willfully refused to remit the $7,500.00 in fees and the $2,404.94 in child support and arrearages. Accordingly, the court held that appellant be confined in the Palm Beach County Jail until the amount of $9,904.94 was satisfied in full, "which the Court finds the Respondent has the ability to pay instanter."
Thereafter, appellant filed an Emergency Motion for Order Modifying Amended Order of Contempt maintaining that he had paid the child support arrearage, but could not pay the fee purge. Appellant claimed that following the conclusion of the hearing on the motion for contempt, he received a payment from a client in an amount sufficient to satisfy the child support obligation; appellant paid the $2,404.04 owed in child support. Appellant maintained that the Amended Order of Contempt did not reflect his payment and that the order made no reference regarding the evidence submitted in support of his inability to pay the purge.
At the hearing on appellant's motion, appellant requested that the court's amended order be corrected to reflect his payment for child support. Appellant then inquired of the court whether he was going to have a hearing on his ability to pay:
[Appellant]: And I'm going to havemy question is, the order that you signed say, unless I pay it in full I'm going to jail Monday.
. . . .
My question, am I going to be afforded a hearing before that time?
The Court: Why? We had a hearing.
[Appellant]: Then, Judge, because my understanding is that even though the court is committing me to jail on Monday before I go to jail, the court is required to have a hearing concerning liability at that time to pay the money.
The Court: We already had that hearing.
. . . .
This is none [sic] emergency, you got two thousandyou had almost eight grand, you could have paid all of it.
[Appellant]: That's why I attached it to that Your Honor the emergency motion. I'm also being evicted, attached to that is an actual eviction for my business. I'm showing I paid the $2,000 that I had of the amount, I don't have any additional funds, Judge. That's why I saidthe other thing
The Court: Doesn't look like an emergency to me, Jake.
[Appellant]: How could I have a hearing? That's my point. The other thing, the order that Phil Chopin gave the court I never saw. He gave you an order and he never showed it to me. The order doesn't have anything concerning my testimony, Judge. I have no money, I have nothing in the bank, I have nothing to pay.
The Court: If you want to schedule a hearing with opposition on the other side, go ahead.
[Appellant]: Can I be heard beforethe question is for the court to decide, can I be heard before Monday? As I stand right now, I have nothing, Judge.
The Court: I don't think the sheriff is going to come looking for Jake on Monday, just because the order says Monday, you know.

*766 [Appellant]: How can it be avoided? I'm requiredyou told me I'm required to turn myself into the jail on Monday.
The Court: I didn't say
[Appellant]: That's what it says.
The Court: I[s]aid if you don't I'll issue a pick up for you.
[Appellant]: Am I going to have a hearing before the pick up order?
The Court: It's a non-emergency Jake, go away.
[Appellant]: Is Your Honor denying the motion?
The Court: Yes.
Thereafter, appellant moved to stay the order of contempt and requested a hearing to demonstrate how his circumstances had worsened since the last order of contempt and that he was unable to comply with the court's order. The court denied such request. In response to appellant's claim that he was being evicted from his business office, the court replied: "You can practice law out of your briefcase."
Appellant argues that the trial court erred in failing to afford him a hearing as to his ability to pay the purge before his incarceration. Appellant further argues that the amended order of contempt neither reflected his payment of child support nor his evidence in support of his inability to pay the purge and that the only monies which remained outstanding were those fees owed to appellee's counsel. He claimed that his situation worsened further after the court entered its amended order, that he had no ability to pay the purge, and thus, faced immediate incarceration. The court refused to hear any further evidence, and held that appellant had until midnight on March 11, 2002, to turn himself in for incarceration.
While appellee concedes that appellant was entitled to a finding as to present ability to pay the purge, she claims that this was done at the contempt hearing.
The purpose of civil contempt is not to punish, but to obtain compliance with a court order. See Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985). A person charged with civil contempt is entitled to an opportunity to be heard. See Koll v. Roll, 812 So.2d 529 (Fla. 4th DCA 2002). Because incarceration is utilized solely to obtain compliance, it must be used only when the contemnor has the ability to comply. See Bowen, 471 So.2d at 1278. The trial court's failure to receive a contemnor's evidence denies him due process and requires reversal. See Walker v. Edel, 727 So.2d 359 (Fla. 5th DCA 1999).
It is well settled that a party cannot be incarcerated for civil contempt if he lacks the present ability to pay the purge amount, even where the party intentionally divested himself of that ability. See Koll, 812 So.2d at 533; Walker, 727 So.2d at 361. "[W]ithout the present ability to pay from some available asset, the contemnor holds no key to the jailhouse door." Bowen, 471 So.2d at 1277.
In Pompey v. Cochran, 685 So.2d 1007, 1014 (Fla. 4th DCA 1997), this court in an en banc decision, relied upon Bowen in determining that there is a two-step procedure for establishing civil contempt in family support cases. First, there must be a procedure for determining if there was a willful violation of a court order:
In these cases, the initial order or judgment directing a party to pay support or alimony is predicated on an affirmative finding that the party has the ability to pay. This initial judicial determination creates, in subsequent proceedings, a presumption that there is an ability to pay. In a civil contempt proceeding for failure to pay child support or alimony, the movant must show that a prior court *767 order directed the party to pay the support or alimony, and that the party in default has failed to make the ordered payments. The burden of producing evidence then shifts to the defaulting party, who must dispel the presumption of ability to pay by demonstrating that, due to circumstances beyond his control which intervened since the time the order directing him to pay was entered, he no longer has the ability to meet his support obligations. The court must then evaluate the evidence to determine whether it is sufficient to justify a finding that the defaulting party has willfully violated the court order.
Id. at 1014 (quoting Bowen, 471 So.2d at 1278-79).
As a second step, which is prerequisite to incarceration, the Bowen court went on to state:
Once the court finds that a civil contempt has occurred, it must determine what alternatives are appropriate to obtain compliance with the court order. If incarceration is deemed appropriate, the court must make a separate, affirmative finding that the contemnor possesses the present ability to comply with the purge conditions set forth in the contempt order. In determining whether the contemnor possesses the ability to pay the purge amount, the trial court is not limited to the amount of cash immediately available to the contemnor; rather, the court may look to all assets from which the amount might be obtained.[2]
(emphasis added) Pompey, 685 So.2d at 1014 (quoting Bowen, 471 So.2d at 1279). Thus, the presumption of ability to pay which exists in the first step is not a substitute for the "separate, affirmative finding" of ability to pay required for incarceration. Id.
The court in this case did not make a separate affirmative finding that appellant had the present ability to pay the purge instanter. We, accordingly, reverse and remand for findings by the court as to appellant's present ability to pay the purge amount prior to incarceration.
REVERSED AND REMANDED.
STEVENSON and HAZOURI, JJ., concur.
NOTES
[1] Appellant's failure to pay temporary attorney's fees and costs was eventually reduced to final judgment.
[2] A court is required to consider all assets and property interests of the obligor, including cash as well as real property and business interests. See Koll, 812 So.2d at 533; Mallardi v. Jenne, 721 So.2d 380, 383 (Fla. 4th DCA 1998).