SHEPHERD, J.
Appellant Felix Lo appeals an order adjudicating him in contempt of court and sentencing him to ninety (90) days’ incarceration in the Dade County jail. We reverse.
Felix and Lynn Lo were divorced in October 1996. Lynn was awarded custody of their two minor children. However, the Final Decree of Divorce signaled just the beginning of post-marital controversy between them over custody, visitation, and *425 other provisions of the divorce decree, particularly as they pertain to the children. The couple’s recriminations led to a three-day trial in 2001, and an omnibus order finding Felix Lo guilty of harassing his former wife, fabricating abuse allegations to bolster his custody claims, and routinely flouting parental obligations ranging from failure to pay child support and interference with their schooling to continuously returning the children late and sometimes not at all. Based upon the testimony received, the Court issued a finely-detailed order relating to the parties’ obligations inter se concerning the children, down to the number of times a day telephone calls could be made between the respective residences. It is clear, however, that the order was transparently directed at Felix and it concluded with this warning:
Noncompliance with any provision of this Order, particularly to the return time of the children, shall subject the offending party to involuntary criminal contempt charges which may include incarceration in the Miami-Dade County Jail.
Despite this yeoman’s effort by the trial judge, the controversy was not stemmed, and Lynn Lo lodged additional motions to compel compliance against her former husband, including a motion for contempt. These additional motions came to a head in a special hearing in June 2003, wherein Lynn accused her former husband of taking their minor son for dental visits without notifying her in writing, taking their minor son on a cruise to Mexico without obtaining her consent, and continued late pick-up and drop-off of the children from visitations — all violations of previous court orders. At the conclusion of the special hearing, the Court found Felix’s testimony to be completely devoid of candor. Then, briefly pausing to note that “[but] for all of the prior violations by the former husband the instant matters ... might not seem so significant,” the court nevertheless held the former husband in “willful contempt” of court, sentencing him to ninety days in jail for what it described as “repeated violations” of court orders and “continued ‘thumbing of his nose’ ” at the trial judge and his predecessors. The relevant part of the order reads as follows:
Based upon the foregoing, it is hereby Ordered and Adjudged
A. That Felix Lo is found to be in willful contempt of this Court’s Orders.
B. That Felix Lo as -punishment for said contempt is sentenced to 90 days in the Dade County jail or any such other secured facility at the discretion of the Department of Corrections. (Emphasis added.)
Felix sought an emergency stay and appeals the order. We address the merits of his appeal.
Although we appreciate the frustration faced by the trial judge in this case, the trial court nevertheless failed to satisfy the legal requirements necessary to hold the former husband in either civil or criminal contempt of court. Contempt of court can be either civil or criminal. Parisi v, Broward, Co., 769 So.2d 359, 363-64 (Fla.2000). Additionally, criminal contempt can be either direct or indirect.
Direct criminal contempt results from conduct committed in the actual presence of a judge, and may be punished summarily by the judge who witnessed the offending conduct; indirect criminal contempt concerns conduct that has occurred outside the presence of the judge.
Martinez v. State, 799 So.2d 313, 314 (Fla. 2d DCA 2001). Unfortunately, for purposes of review by us, the Order does not enlighten us as to the nature of the contempt that the trial judge intended to impose upon Mr. Lo. It appears from the trial court’s use of the term “punishment” that the court may have intended to place *426 Mr. Lo in indirect criminal contempt of court. But the touchstone of indirect criminal contempt is not “punishment,” but rather an express finding of “guilty” or “not guilty.” See Fla. R.Crim. P. 3.840(f). Moreover, before any sentence for indirect criminal contempt can be imposed, Fla. R.Crim. P. 3.840 requires notice of the accusations against a defendant, an opportunity for a defendant to show cause the sentence should not be imposed, and pronouncement of the judgment and sentence by the court. Here, the Order does not contain a finding of guilt; nor did the proceedings afford Felix the chance to be heard prior to the Court’s sentence of ninety days’ incarceration. Thus, even if the Court intended that Felix be found guilty of indirect criminal contempt, lack of the procedural safeguards mandated under Fla. R.Crim. P. 3.840 renders the Order defective.
Conversely, if the Court found Felix guilty of civil contempt, the Order fails for want of a purge provision, i.e., a proviso within the Order giving the condemner power to avoid imposition of the sentence. See Bowen v. Bowen, 471 So.2d 1274 (Fla.1985). Bowen made clear that “the purpose of civil contempt is not to punish, but to obtain compliance with a court order.” Id. at 1277. “Because incarceration is utilized solely to obtain compliance, it must be used only when the condemner has the ability to comply. This ability to comply is the condemner’s ‘key to his cell.’ ” Id. See also, Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997).
Repeated disregard of court orders and lack of candor by a party toward the Court justifies findings of either civil contempt or indirect criminal contempt so long as lawful procedures and conditions adhere. Fla. R.Crim. P. 3.840. See South Dade Farms, Inc. v. Peters, 88 So.2d 891, 897 (Fla.1956) (“There can be no doubt of the authority of a court to administer appropriate punishment for contemptuous conduct of parties bound by its decree.”) But given the ambiguity of the proceedings below, and failure of the trial court to afford the procedural safeguards of Fla. R.App. P. 3.840 if the proceeding was intended to be criminal in nature, we are compelled to reverse and remand this case for a new hearing on the former wife’s motion. At the same time, while acknowledging and commending the not inconsiderable investment that the trial judge below has made in ameliorating the differences between the parties and fostering the best interests of the children,[1] we also find that in the interests of insuring fairness, any further proceedings on this issue should be held before a different trial judge. Porter v. Porter, 698 So.2d 643 (Fla. 3d DCA 1997).

. During the course of these proceedings one of the children has achieved the age of majority.