NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

EDWARD P. BRYAN,  )
 )
        Appellant,  )
 )
v.  )      Case No. 2D14-2433
 )
CLAUDIA JEMAL,  )
 )
        Appellee.  )
 )

Opinion filed February 5, 2016.

Appeal from the Circuit Court for Pinellas
County; Joseph A. Bulone, Judge.

Allison M. Perry of Florida Appeals &
Mediations, P.A., Tampa, for Appellant.

Claudia Jemal, pro se.


ALTENBERND, Judge.

Edward P. Bryan appeals a civil contempt order entered by the circuit

court following his failure to abide by the terms of the marital settlement agreement

between Mr. Bryan and his former wife, Claudia Jemal. Although there probably are

enforcement remedies available either in Florida or California that could assist Ms.

Jemal in collecting what is due to her, this civil contempt order must be reversed.

After an almost thirty-year marriage, the parties entered into a marital

settlement agreement that was incorporated into a Florida judgment of dissolution in

2008.  At the time the parties entered into the settlement agreement, they were the sole owners of a California corporation, Bryan Exhaust Services.  Pursuant to the equitable distribution in the agreement, Ms. Jemal was to transfer her fifty-percent interest in the corporation to Mr. Bryan and, in return, Mr. Bryan was required to pay Ms. Jemal $210,000.  Thereafter, beginning on July 1, 2010, Mr. Bryan was required to pay annual alimony of $125,000 and to maintain a life insurance policy providing a $1,000,000 benefit payable to Ms. Jemal.

Mr. Bryan made the payment for equitable distribution.  However, by September 13, 2013, Mr. Bryan was approximately $310,000 behind on his alimony payments and $45,000 behind on premium payments that Ms. Jemal had paid to keep the life insurance policy in effect.  The parties stipulated to the entry of a judgment for arrearages, which judgment was entered in October 2013.  When Mr. Bryan did not pay this judgment, Ms. Jemal sought a civil contempt order to compel him to pay the judgment.

At the time of the evidentiary hearing in December 2013, Mr. Bryan lived in North Hollywood, California.  He testified that he had recently remarried.  Although he owned another home nearby, he was living in a rental home with his wife.  He had various personal assets that he valued at approximately $35,000.  He admitted, however, that he was making approximately $240,000 per year when he entered into the marital settlement agreement and that he made a "gross yearly income" of $183,000 in 2012.  He testified that if he paid Ms. Jemal $125,000 per year, he would have only $40,000 per year on which to live.

Significantly, Mr. Bryan testified that he sold Bryan Exhaust Services for $800,000 in 2010 or 2011. He sold the business to his son from a different marriage in order to keep Ms. Jemal from getting it. Mr. Bryan did not receive any cash as part of the transaction. Instead, his son gave him a promissory note in the amount of $800,000, payable at the rate of $5,000 per month. Any outstanding balance on the note is to be forgiven when Mr. Bryan dies. He was seventy-three years old at the time of the contempt hearing. Mr. Bryan believed that he had sold the business for less than fair market value.

The circuit court's thorough order contains additional findings concerning assets and significant, avoidable personal expenses of Mr. Bryan that we need not detail in this opinion. The court found that Mr. Bryan had an ability to pay $11,416.67 per month toward his current obligations and past arrearages. Only $1000 of this amount is a payment on the arrearage that exceeds $350,000 and continues to accrue interest. The court found that Mr. Bryan was willfully refusing to pay this obligation. To this point, the circuit court's order is supported by competent substantial evidence, and the amount of the payment ordered appears to be within the court's discretion.

However, the order then states:

> Former Husband shall be, and he is hereby, adjudicated to be in civil contempt for his willful failure and refusal to pay the permanent alimony required of him by the Final Judgment of Dissolution of Marriage, and he is hereby sentenced to report to the Pinellas County Jail for a period of five months and twenty-nine days, said sentence to commence as specified below:
>
> On or before the 16th of each and every month beginning January 16, 2014, Former Husband may purge himself of said contempt, and if incarcerated at that time shall be released from the Pinellas County Jail without

> further order, upon payment of the sum of **$11,416.67** per calendar month (and not later than the 15th day of each calendar month) to Former Wife or to the Sheriff of Pinellas County, Florida, for transmission to Former Wife. **If Former Husband has not purged himself of said contempt within the time frame specified in this paragraph, he shall report to the Pinellas County Jail on the 16th day of each and every month beginning January 16, 2014, at 5:00 p.m., then and there to commence serving said sentence.** Should Former Husband fail to purge himself of said contempt prior to the commencement of his sentence, and he should fail to report to the Pinellas County Jail as required by this order, an order for the instant[] arrest of Former Husband shall be issued without further hearing. This is a continuing and monthly purge amount until Former Husband is current in all alimony payments and arrearages.

(Emphasis in original.)

Although it seems unlikely that Mr. Bryan will actually travel from California to Pinellas County to turn himself into the county jail to serve his six-month sentence, it is beyond dispute that incarceration cannot be imposed as a sanction for civil contempt in such a prospective fashion. In Bowen v. Bowen, 471 So. 2d 1274, 1277-79 (Fla. 1985), the supreme court set out the proper procedures for imposing contempt and held that "incarceration for civil contempt cannot be imposed absent a finding by the trial court that the contemnor has the present ability to purge himself of contempt." (Emphasis added.) Moreover, "due process requires that the contemnor be apprised of the nature of his contempt and that he be afforded an opportunity to be heard and defend the allegations levelled against him." Cokonougher v. Cokonougher, 543 So. 2d 460, 461 (Fla. 2d DCA 1989). Thus, "a contempt order that operates prospectively, by ordering the automatic issuance of a committal order in the event of future noncompliance without requiring an additional hearing, violates due process and is improper." Id.

- 4 -

Accordingly, although we do not disturb the circuit court's findings of fact, we reverse the order, striking all portions of the order after the phrase "ordered and adjudged" on page thirteen. On remand, the circuit court is permitted to take additional evidence as needed and shall fashion an order in compliance with the applicable law.

Affirmed in part, reversed in part, and remanded.

KELLY and LaROSE, JJ., Concur.