# Third District Court of Appeal
## State of Florida

Opinion filed May 16, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D17-2726 & 3D17-2763
Lower Tribunal No. 16-25108
_____


**Bronislaw Bajcar,**
Petitioner,

vs.

**Monika Klaudia Bajcar,**
Respondent.


A Writ of Certiorari to the Circuit Court for Miami-Dade County, Rosa C. Figarola, Judge.

Lowry at Law, P.A., and Carla P. Lowry (Fort Lauderdale), for petitioner.

Mary Nikezic (Fort Lauderdale), for respondent.


Before ROTHENBERG, C.J., and EMAS and LUCK, JJ.

EMAS, J.

**INTRODUCTION**

Bronislaw Bajcar ("the father") petitions for a writ of certiorari,[1] seeking relief from the trial court's writ of bodily attachment, issued against the father, directing that he be taken into custody for his failure to comply with previous orders of the trial court. Because the trial court failed to comply with the procedural requirements for indirect criminal contempt proceedings, depriving the father of the constitutional due process protections to which he is entitled, we grant the petition and quash the writ of bodily attachment.

**FACTS AND PROCEDURAL HISTORY**

The father, a Polish citizen, married Monika Klaudia Bajcar ("the mother"), also a Polish citizen, in Poland. The mother and father have a minor child, who is also a Polish citizen, and are currently embroiled in a divorce and child custody dispute in Poland.

In December 2013, the mother brought the child to Miami on a visitor visa. The father claims that the mother absconded from Poland with the child; nevertheless, on March 4, 2016, the Polish court entered a custody[2] order,

---

[1] We have consolidated this petition with a writ of prohibition filed by the father after the trial court denied his motion for disqualification of the trial judge. See Case No. 3D17-2763. We deny that petition without further discussion.

[2] In 2008, the Florida Legislature replaced the terms "visitation" and "custody" in favor of the concepts of "time sharing" and a "parenting plan" that includes "parental responsibility." See Ch. 2008-61, s. 8, Laws of Fla; § 61.13(3),(5), Fla. Stat. (2017). However, our references here are to the terminology utilized by the

acknowledging the child's then-current residence in the United States, and granting visitation with the father for two weekends per month, in addition to Christmas Break and one month of summer vacation (June 15 to July 15). The Polish court order also expressly permitted the father to bring the child back to Poland for Christmas Break and summer vacation, with the proviso that he return the child to the child's home in the United States.

### The August 3rd Order

When the mother allegedly refused the father his visitation rights, the father filed a petition in Miami-Dade Circuit Court to register and enforce the Polish order as written. The mother agreed that the Polish order should be recognized, but asserted that the Florida court could modify the terms of the order. The trial court referred the matter to a general magistrate, who specifically determined: "There is no basis for the Florida courts to modify the Polish court decrees on the issue of visitation between the father and the minor child. The Florida courts must enforce the Polish decrees." The trial court approved and ratified the general magistrate's recommendation on July 31, 2017. On August 3, 2017, the court granted the father's motion for makeup time sharing, allowing him to exercise his time sharing between August 3 and August 17.

### The August 7th Order

---

Polish court in its orders.

The mother moved to vacate the trial court's order, claiming she was afraid the father would not return the child if the child was permitted to go with the father to Poland.

On August 7, 2017 the court held a hearing on the mother's motion to vacate. The court denied the mother's motion, acknowledging that the "State of Florida cannot interfere with judicial proceedings that are taking place in Poland and is required to honor and enforce the Polish Court's order." At that same hearing, the court ordered that the father could pick up the child that same day, and could travel with the child to Poland, but that he must return the child at noon on August 17, 2017. The order further provided that, before the mother turns over the child, the father must provide the mother with a travel itinerary containing his return date. The father was also ordered to permit the mother to speak to the child on a daily basis. Thereafter, the mother turned the child over to the father, who took the child to Poland as provided in the trial court's order. According to the mother, the father never provided her with the travel itinerary.

**The August 11th Order**

On August 10, the mother received a text from the child that simply read "Help." When she could not contact the child thereafter, the mother called the trial judge's chambers, and the court called the father's attorney and instructed him to tell the father not to travel to Poland with the child. The father's attorney advised

4

the court that the father and child were already in Poland, pursuant to the court's August 7 order permitting same. Notwithstanding this communication from the father's attorney, the court entered an order, on August 11, requiring the father to "remain" in Florida and requiring the parties to appear in court on August 14, at which time the court was to determine whether the father was in violation of the trial court's August 7 order. The father did not appear on August 14, but the record does not reveal whether the court took any action at this hearing.

**The Contempt Hearing and Issuance of the Writ of Bodily Attachment**

More than three months later, on November 28, 2017, the mother filed an unsworn emergency motion for contempt and enforcement, asserting that the father was still in Poland with the child, that the mother had had no contact with the child, and that the mother was unable to exercise any time sharing. The emergency motion indicated that the mother had reason to believe the father was in Miami and would remain here for five days. The mother asked the trial court to order the father to appear and show cause why he should not be held in contempt for violating the court's previous order of August 7 (requiring the father to provide a travel itinerary and permit daily contact between the mother and child, and directing the child be returned to the mother on August 17) and August 11 (requiring the father to "remain" in Florida and ordering him to appear in court on August 14).

Two days later, on November 30, at 10:04 a.m., the trial judge's judicial assistant emailed counsel for the father, instructing him that the trial court would hear the mother's emergency motion for contempt and enforcement that same day, at 2 p.m. The father, who was still in Poland, did not appear at the hearing, but the father's attorney appeared by phone. This hearing was not recorded, and the father's attorney asserts he had inadequate time to secure a court reporter for the hearing.

At the conclusion of that hearing, the trial court issued a writ of bodily attachment, ordering the sheriff to take the father into custody and confine him in the county jail for his violation of the court's previous orders dated August 3, 2017, August 7, 2017 and August 11, 2017. This petition followed.

**ANALYSIS**

We first must determine whether the contempt hearing, and the writ of bodily attachment issued at the conclusion of that hearing, constituted a civil or criminal contempt. Generally speaking, a civil contempt is intended not to "punish" past conduct but to coerce future compliance. Bowen v. Bowen, 471 So. 2d 1274 (Fla. 1985); Sarron v. Crawford, 464 So. 2d 644 (Fla. 3d DCA 1985). In other words, civil contempt is prospective, seeking to compel the contemnor to comply with an existing court order or obligation. While civil contempt may, under appropriate circumstances, result in incarceration of the contemnor,

6

incarceration is not the ultimate goal; it is merely a means to an end. In the civil contempt context, the contemnor "carries the key to his cell in his own pocket," as he can purge himself of the contempt and will be released upon compliance with the court's order. Pugliese v. Pugliese, 347 So. 2d 422, 424 (Fla. 1977); Saunders v. Saunders, 183 So. 2d 239 (Fla. 1st DCA 1966).

By contrast, criminal contempt is a sanction for past conduct, intended "to vindicate the authority of a court and to punish the offending participant." Bowen, 471 So. 2d at 1277; The Florida Bar v. Taylor, 648 So. 2d 709, 710 n.2 (Fla. 1995). Incarceration in this context is not merely a means to an end; it is an end unto itself. Based upon the circumstances of this case and the nature of the prior orders allegedly violated, we conclude that the writ of bodily attachment issued by the trial court constituted an indirect criminal contempt order.

A trial court clearly has the authority to enforce its orders and, where appropriate, to punish a party who violates those orders. However, before a court may impose indirect criminal contempt sanctions, "potential criminal contemnors are entitled to the same constitutional due process protections afforded criminal defendants in more typical criminal proceedings." Bowen, 471 So. 2d at 1277; White v. Junior, 219 So. 3d 230 (Fla. 3d DCA 2017); Kersh v. State Farm Fire & Casualty Co., 686 So. 2d 782 (Fla. 3d DCA 1997). See also Pugliese, 347 So. 2d at 424-25.

The procedural components of an indirect criminal contempt are incorporated in Florida Rule of Criminal Procedure 3.840, which provides in pertinent part:

**Rule 3.840. Indirect Criminal Contempt**

A criminal contempt, except as provided in rule 3.830 concerning direct contempts, shall be prosecuted in the following manner:

**(a) Order to Show Cause.** The judge, on the judge's own motion or on affidavit of any person having knowledge of the facts, may issue and sign an order directed to the defendant, stating the essential facts constituting the criminal contempt charged and requiring the defendant to appear before the court to show cause why the defendant should not be held in contempt of court. The order shall specify the time and place of the hearing, with a reasonable time allowed for preparation of the defense after service of the order on the defendant.

**(b) Motions; Answer.** The defendant, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer the order by way of explanation or defense. All motions and the answer shall be in writing unless specified otherwise by the judge. A defendant's omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.

**(c) Order of Arrest; Bail.** The judge may issue an order of arrest of the defendant if the judge has reason to believe the defendant will not appear in response to the order to show cause. The defendant shall be admitted to bail in the manner provided by law in criminal cases.

**(d) Arraignment; Hearing.** The defendant may be arraigned at the time of the hearing, or prior thereto at the defendant's request. A hearing to determine the guilt or innocence of the defendant shall follow a plea of not guilty. The judge may conduct a hearing without assistance of counsel or may be assisted by the prosecuting attorney or by an attorney appointed for that purpose. The defendant is entitled to

8

be represented by counsel, have compulsory process for the attendance of witnesses, and testify in his or her own defense. All issues of law and fact shall be heard and determined by the judge.

Indirect criminal contempt proceedings require strict adherence to rule 3.840. Berlow v. Berlow, 21 So. 3d 81 (Fla. 3d DCA 2009); Sylvester v. State, 923 So. 2d 1289 (Fla. 5th DCA 2006); Levy v. D'Angelo, 819 So. 2d 864 (Fla. 4th DCA 2002); Lindman v. Ellis, 658 So. 2d 632 (Fla. 2d DCA 1995). In the instant case, no order to show cause was issued by the trial court. See rule 3.840(a); Goral v. State, 553 So. 2d 1282 (Fla. 3d DCA 1989) (holding a motion for contempt or motion for order to show cause cannot itself serve as the order to show cause). Further, the motion for contempt was unsworn, was not accompanied by an affidavit, and neither the motion nor the court's communication to the father's attorney placed the father on notice that he was facing potential criminal penalties. See De Castro v. De Castro, 957 So. 2d 1258 (Fla. 3d DCA 2007). Finally, the hearing which resulted in the issuance of the writ was held on less than four hours' notice to the father's attorney, and was held notwithstanding the fact that the attorney advised the court that the father was in Poland with the child. See rule 3.840(a); Goral, 553 So. 2d at 1283 (two working days' notice of the contempt hearing did not provide a reasonable amount of time for preparation of a defense); Russ v. State, 622 So. 2d 501 (Fla. 5th DCA 1993) (holding hearing less than two

days after service of order to show cause violated due process rights of contemnor).

## CONCLUSION

The trial court failed to strictly comply with the requirements of rule 3.840, and denied the father those constitutional due process protections to which he is entitled in an indirect criminal contempt proceeding. The trial court thus departed from the essential requirements of the law, resulting in irreparable harm. We therefore grant the petition for writ of certiorari and quash the writ of bodily attachment.

Petition for writ of prohibition denied. Petition for writ of certiorari granted; writ of bodily attachment quashed.